[No. 1084, February 24, 1905.]

TERRITORY OF NEW MEXICO, Appellee, v. J. M. NEWMAN, Appellant.

### SYLLABUS.

Criminal law; constitutional law; class legislation.

1. In the trial of one charged with practicing medicine without having obtained a license, as required by Chapter 40 of the Session Laws of 1903, an instruction to the jury that there was no evidence to justify conviction on the first and third sub-divisions of Section 6 of said act, as made by the court for the purpose of a trial, and that they should consider only the evidence bearing on the second sub-division, was sufficiently favorable to the defendant.

Territory v. Newman.

2. The defendant was not entitled to have the jury instructed to return a verdict of not guilty on the ground that there was no evidence to show that he had at any time engaged, or offered to engage in the practice of medicine.

3. Chapter 40 of the Session Laws of 1903, is not class legislation within the meaning of the 14th amendment of the constitution of the United States.

Appeal from the district court of Chaves county, before WILLIAM H. POPE, Associate Justice. Affirmed.

A. J. NISBET, and J. L. JOHNSON, for appellant.

The court erred in refusing to instruct the jury to return a verdict of not guilty as requested by counsel for appellant because there was no evidence tending to show that appellant ever at any time engaged or offered to engage in the practice of medicine.

> Bishop's New Criminal Procedure, Vol. 1, Sec. 977.

Chapter 40 of the Session Acts of 1903, is unconstitutional, as being class legislation.

> State v. McKnight, 131 N. C. 723; 59 L. R. A. 187.

On the unconstitutionality of this statute see also:

> State v. Biggs, 133 N. C. 720, 64 L. R. A. 139; McAden v. Jenroy, 64 N. C. 801.

GEORGE W. PRICHARD, Solicitor General, for appellee.

Every presumption is in favor of the constitutionality of a legislative enactment, and the court will be justified in pronouncing it unconstitutional only when it becomes a manifest usurpation of power.

> Cooper v. Telfair, 4 Dall. (U. S.) 14; Fletcher v. Peek, 6 Cranch, U. S. 128.

The wisdom or expediency of a law is a matter entirely for the legislature.

> Flint River Steam Boat Co. v. Foster, 5 Ga. 194; Germand v. Tacoma, 6 Wash. 365; Perkins v. Phila. 156 Pa. St. 554.

No privilege or immunity has been abridged by the act referred to.

Sultan v. State, 96 Tenn. 710; Vanzant
v. Waddell, 2 Yerg. (Tenn.) 260; Am. and
Eng. Ency. of Law, Vol. 10, p. 302.

The constitutionality of statutes regulating the prac-
tice of medicine has been frequently upheld as a valid
exercise of police power, and not in violation of either
federal or state constitutions.

Dent v. West Virginia, 129 U. S. 114; Ex-
parte McNulty, 77 Cal. 164; 2 Am. St. Rep.
257; State v. Creditor, 44 Kas. 565; In-re-
Chung, Petitioner 9 New Mexico, 130; State
v. State, Med. Ex-Board, 32 Minn. 324; State
v. Green, 112 Ind. 462; State v. Webster, 150
Ind. 166; People v. Phippin, 70 Mich. 6; Dow-
ell v. McBride, 92 Tex. 239.

### STATEMENT OF FACTS.

The defendant was indicted October 31st, 1904, for
practicing, or offering to practice medicine without having
obtained a license, as required by Section 9 of Chapter 40
of the Session Laws of 1903; and was tried and convicted
by a jury, November 3rd, 1904; a motion for a new trial
was filed in his behalf, and overruled after hearing and on
the same day he was sentenced by the court to pay a fine
and to be imprisoned, but the sentence to imprisonment
was suspended. From said judgment and sentence the de-
fendant appealed. The essential facts of the statute in
question appear in the opinion.

### OPINION OF THE COURT.

ABBOTT, J.—We take up the appellant's objections
to the judgment appealed from in the inverse order of
their importance; and, first, the claim that it was
error to instruct the jury that there was no evidence
to warrant a conviction on the first and third sub-
divisions of Section 6, of Chapter 40, of the Session Laws
of 1903, and that they should take into consideration
only the evidence bearing on the second sub-division. The
instruction objected to was as follows: "The practice of
medicine. . . means (1) to open an office for the practice
of medicine, or (2) to announce to the public or to any

Territory v. Newman.

individual in any way, a desire or willingness, or readiness, to treat the sick or afflicted, or investigate or diagnose or offer to investigate or diagnose, any physical or mental ailment or disease, of any person, or (3) to suggest, recommend, prescribe or direct for the use of any person any drug, medicine, appliance, or other agency, whether material or not material, for the use, relief or palliation of any ailment or disease of the mind or body, or the cure or relief of any wound, fracture, or bodily injury or deformity, after having received or with the intent to receive therefore, either directly or indirectly any bonus, gift or compensation."

This instruction seems to us to have been favorable to the defendant rather than otherwise, since it greatly restricted the number of acts which the jury might otherwise have found the defendant committed in violation of the statute. The sub-division complained of was a proper and appropriate one, under the circumstances.

The appellant objects, further, that by the statute in question a new, unusual and false meaning was given to the phrase "practicing medicine;" that he never engaged or offered to engage in the practice of medicine, that on the contrary the evidence showed him to be a practitioner of a system of drugless healing, and that the legislature could not so extend the meaning of said words "practice of medicine" as to cover and include methods of healing diametrically opposed to the practice of medicine as theretofore commonly understood and defined, and he cites in support of his contention, State of North Carolina v. Biggs, 133 N. C. 720, in which that doctrine is strongly set forth and adopted as the opinion of the court. But it seems to us that the opinion makes the question one of form rather than substance, whereas, it is the thing prohibited, and not the words by which it is described that is alone important. It would perhaps have been possible for the legislature to choose a better phrase under which to group healing methods of all kinds, although the use of the expression "practicing medicine" to mean the art of healing is by no means new, but rather a return to the original meaning of the word medical.

But whatever may be thought of the terms in which

the prohibition of the statute is expressed, there can be no doubt of their meaning, and the appellant was clearly forbidden to do that which the evidence shows, and he does not deny, that he did, without a license from the board of health provided for by the statute. That it is not claimed, he had, and, if the statute is valid, he is liable to the penalty imposed by it.

The appellant, however, contends that the statute is invalid; first, if we correctly understand the brief submitted in his behalf, because certain acts are made punishable if done for fee or reward, which otherwise are not prohibited, and generally because it is contrary to the 14th amendment of the constitution of the United States which forbids class legislation. It should be noted at the outset that the statute does not forbid the use of methods which the appellant says he follows for the cure of disease or any other methods whatever; but only requires that those who prescribe or make use of them in the practice of medicine as defined by the statute shall have qualified themselves for such practice and received a license as evidence of such qualification.

That the practice of the art of healing in whatever form and under whatever name it may be followed, is subject to regulation by legislative enactment, under the police power of the state, is not questioned by the appellant, and, indeed, the principle is so well established that it is no longer open to question. If there were no such rights and regulations it would be necessary to create it for the protection of the public against those who take advantage of the wide spread ignorance which exists in relation to the human organism to impose their useless and often harmful nostrums, and treatments on those who are, or may be led to believe they are in some way diseased. In Bent v. West Virginia, 132 U. S. 114, Field, J., says:

"Few professions require more careful preparation by one who seeks to enter it than that of medicine. It has to deal with all those subtle and mysterious influences upon which health and life depend, and requires not only a knowledge of the properties of vegetable and mineral substances, but of the human body in all its complicated parts and their relation to each other as well as their in-

fluence upon the mind. Every one may have occasion to consult him, (the physician). But comparatively few can judge of the qualifications of learning and skill which he possesses. Reliance must be placed upon the assurance given by his license, issued by an authority competent to judge in that respect, that he possesses the requisite qualifications." State ex rel. Burrough v. Webster, et al., 150 Ind. 607.

It is equally certain that the right to regulate should be exercised only in the public interest and not to create monopolies, or otherwise to violate those fundamental rights which are secured to all citizens.

Have the rights of the appellant been thus infringed by the statute in question?

That certain acts should be made punishable if done for gain which are not prohibited if done without bad motive, seems to us to be a matter properly within the discretion of the legislature. It may reasonably have been assumed that the public needed no protection against charitable or friendly ministrations in which the elements of good faith and sincerity of belief in the remedies prescribed would naturally be present, and in which greed could have no place.

The appellant further contends that by the statute in question a favored class is created, and that he is prevented from following his calling and is deprived of a valuable right without process of law. This he says is accomplished by requiring him to obtain a license, as a prerequisite to the exercise of his art, from a board composed exclusively of doctors of medicine, whereas he uses no medicine and is in fact a disbeliever in and opposed to the practice of medicine as commonly understood. It is true that the statute commits the licensing power to a board composed of physicians who shall be graduates of some medical school in good standing, but the inclusion under the term "practice of medicine" of what it is made to cover by the statute might reasonably be construed to extend the meaning of the words used to describe the members of the board, in like manner. Whether that view be taken or not, it is certain that the board provided for could be held by the courts to the exercise of its powers in

a reasonable and just manner and would have no right to refuse to issue a license to any one merely because of his being a practitioner of some school of healing different from that to which the members of the board belong.

The appellant claims, also, that the educational qualifications imposed by the statute are not adapted to or required in the simple method of healing which he follows and that they amount to a prohibition of his constitutional right to follow his calling. In an able and exhaustive opinion on the construction of a statute differing in no essential feature from the one under consideration, Gillett, J., says, in Parks v. State, 159 Ind. 211; 59 L. R. A. 190: "We think the legislature is the appropriate tribunal to determine the degree of learning that those who gain a livelihood by seeking to relieve the bodily ailments of others should posess," and in Dent. v. West Virginia, *supra*, it is said: "The nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate to the calling or profession and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty. It is only when they have no relation to such calling or profession, or are unattainable by such reasonable study and application, that they can operate to deprive one of his right to pursue a lawful vocation."

It is true that "no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances." Barbier v. Connely, 113 U. S. 27. But the requirements are the same for all who purpose to engage in the practice of medicine as defined by the statute in question, and therefore not open to the objection that any particular class is unduly favored.

William J. Mills, C. J., Frank W. Parker, A. J., John R. McFie, A. J., concur.

Mann, A. J., dissents.

Pope, A. J., having heard the case below did not participate in this decision.

MANN, J., (Dissenting).—I cannot concur in the opinion of the learned judges constituting a majority of

Territory v. Newman.

this court for reasons which I will attempt to briefly outline.

I heartily concur in all that has been said by the court with reference to the necessity and advisability of stringent laws regulating the practice of medicine, but contend that such laws must have for their primary object, the protection of the people against the serious consequences resulting from the ignorant and incompetent administration of dangerous and poisonous drugs and nostrums, or the unskillful use of surgical instruments by those not sufficiently learned in the sciences of surgery and anatomy, if such laws propose to regulate and fix the qualifications of the practice of medicine.

The term "practice of medicine" has a well defined and well understood meaning, and no person of ordinary intelligence is ignorant of it in the common acceptation of the term. The legislature which passed the act in question (Chap. 40, Session Laws, 1903) itself recognized the term in its ordinary sense for Section 1 of the Act provides that the board of health shall consist of seven reputable physicians of known ability, who are graduates of medical schools of good standing, etc., and Sec. 3, after providing that said board of health upon the proper showing made, may license any reputable person *who is a graduate of* a medical college in good standing, to practice *medicine, surgery* and *obstetrics,* proceeds to define a medical school in good standing as one of ten years' continuous existence which now requires a high school certificate as its equivalent for admission to it, and one which now or hereafter requires an attendance on, and gives, four full courses in four separate years, and one which has ample clinical facilities such as are furnished in large cities, thus showing that the legislature had in mind the regulation of that branch of the art of healing, represented by the several schools of medicine and by physicians as they are generally known and understood by the public. As a further evidence that the whole field of healing was not intended by the act, I would call attention to the fact that the same legislature, six days after the adoption of Chap. 40, passed Chap. 90, (Session Laws, 1903), authorizing the practice of osteopathy in the Territory, and such act

does not require the osteopath to receive a certificate from the board of health, or require him to be a graduate of any "medical school in good standing," but only requires him to produce a diploma from a recognized school of osteopathy.

The only objectional feature of Chap. 40, Session Laws, 1903, is Sec. 6, of said Act, which attempts to place upon the term "practice of medicine," an arbitrary meaning, contrary to its natural and ordinary significance and thereby to change the evident object of a salutary law, from the purpose of protecting the public, to a vicious and outrageous attempt to oppress and abridge the constitutional rights of certain "healers" who are opposed to the use of drugs and surgical instruments, and of the people to employ such healers.

Sec. 6 reads as follows:

"Sec. 6. For the purpose of this act the words 'practice of medicine' shall mean to open an office for such purpose or to announce to the public or to any individual in any way, a desire or willingness or readiness to treat the sick or afflicted, or investigate or diagnose, or offer to investigate or diagnose, any physical or mental ailment or disease of any person or to suggest, recommend, prescribe or direct, for the use of any person, any drug, medicine, appliance or other agency, whether material or not material, for the cure, relief or palliation of any ailment or disease of the mind or body, or for the cure or relief, of any wound, fracture or bodily injury or deformity, after having received, or with the intent of receiving therefor either directly or indirectly, any bonus, gift or compensation.

Provided that nothing in this Act shall be construed to prohibit gratuitous services in cases of emergency, or the domestic administration of family remedies, or women from practicing midwifery, and this Act shall not apply to surgeons of the United States in the discharge of their official duties."

Bouvier defines the practice of medicine as follows: "The practice of medicine includes the application and use of medicines and drugs for the purpose of curing, mitigating or alleviating bodily diseases, while the practice of

surgery is limited to manual operations usually performed by surgical instruments or appliances," 2nd Bouvier, 394, citing 24 Hunter, 32.

A physician is defined as "a person who has received the degree of Doctor of Medicine from an incorporated institution," 2nd. Bouvier, 669, and these definitions are the generaly accepted meaning of the terms, and the practice of medicine as so understood, was unquestionably a proper subject of regulation by the Legislature, and would no doubt be recognized by the courts, and Chap. 40, Session Laws, 1903, duly enforced without Sec. 6 of said Act.

The Supreme court of the United States in Lowton v. Steele, 152 U. S., 137, discussing the police power of a state speaking through Mr. Justice Brown says: "To justify a state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and second, that the means are reasonably necessary for the accomplishment of the purpose and not unduly oppressive upon individuals. The Legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts," and further, at page 138, after citing several cases, continues: "In all these cases the acts were held to be invalid as involving unnecessary invasion of the rights of others, and a practical inhibition of certain occupations, harmless in themselves, and which might be carried on without detriment to the public interests."

The case of State v. Biggs, 133 N. C., 729, 64 L. R. A., 145 was a case almost exactly like the case at bar, where a healer whose methods were similar to the appellants, was convicted of practicing medicine under a North Carolina statute, attempting to define the practice of medicine so as to cover every method of treatment of the sick and afflicted, and the Supreme Court of that state in reversing the lower court and declaring the law unconstitutional, says:

"The public have a right to know that those holding themselves out as members of that ancient and honorable profession (doctors of medicine) are competent, and duly licensed as such. The Legislature can exert its police power to that end, because it is a profession whose practice requires the highest learning and skill, but there are methods of treatment which do not require much skill and learning if any. Patients have a right to use such methods if they wish, and the attempt to require an examination of the character above cited for the application of such treatment is not warranted by any legitimate exercise of the police power." State v. Biggs, 64 L. R. A. 145.

The same court in another case, passing upon the question whether osteopathy was the practice of medicine and surgery under the same statute, says: "Certainly a statute requiring examination and license, before beginning the practice of medicine and surgery, neither regulates nor forbids, any mode of treatment which absolutely excludes medicines and surgery from its pathology." See also, State v. McKnight, 59 L. R. A., 187; Smith v. Lane, 24 Hun. 632; State v. Liffring, 61 Oh. St. 36, 46 L. R. A. 334; Nelson v. St. Bd. of Health, 57 S. W. 501. The learned judge who wrote the majority opinion in this case, says: "It should be noted at the outset that the statute does not forbid the use of the methods which the appellant followed for the cure of the disease, or any other methods whatever, but only requires that those who prescribe, or made use of them in the practice of medicine as defined by the statute shall have qualified themselves for such practice and received a license because of such qualification."

But I contend that the statute allows no one but a regular doctor of medicine to use any method of healing, *if any charge is made therefore.*

The appellant, as shown by the record, was what is known as a magnetic healer and his method of treatment was confined solely to the kneading and manipulation of the muscles and rubbing of the body with his hands. He eschewed medicine and surgery and was avowedly opposed to the administration of drugs. There is nothing to show that his methods could possible injure the public and no

Territory v. Newman.

one could be mislead for he advertised as a "drugless doctor."

Why should one who administers no medicines of any kind, be compelled to take a four years' course in a "medical college in good standing," and be examined in materia medica, etc., by seven reputable physicians, when it is not shown that anything taught in a medical school is required in the practice of his method? As well say that no man may practice law without a certificate that he is a competent civil engineer, and that none may preach the Gospel except they are proficient in the science of botany. If any special qualifications are necessary to a "magnetic healer," no doubt the Legislature may, if it appeared that the public may be in danger of those not so qualified, regulate the practice by requiring an examination and a license issued by a board composed of magnetic healers, qualified to judge of such qualifications, as are necessary, but certainly it cannot impose upon such a practitioner an unnecessary waste of time and money, to acquire a knowledge that is of no use in such profession or calling.

It is a matter of common knowledge that new methods of treatment have arisen in late years, contrary to the teachings of the ancient and honorable schools of medicine and surgery. Among those are osteopathy, magnetic healing and the like, where no drugs are administered and no surgical operations performed. The merits and efficacy of such remedies are matters of opinion, many people believe in such methods and in my judgment, have a right to resort to them if they wish, and those using them, have a right to do so, subject only to the the right of the Legislature to place upon them such restrictions as will insure the public against harm in their administration. The Legislature has no right to confine such person to the physician's prescription, or the surgeon's knife.

Sec. 6 of said Chapter 40 is an attempt to restrict all persons to the one method of healing to the exclusion of every other, the test of the things which are to constitute the practice of medicine is the receiving or expectance of a fee. It obviously is intended for the protection of

the doctor and not of the public and is, therefore, unconstitutional and void.

Why, may I ask, are certain acts defined as the practice of medicine, where a fee is asked, when the same acts are otherwise when done gratuitously? Is not one who administers medicine and holds out to the public as a doctor of medicine, a practitioner of medicine, regardless of whether he expects or receives a fee or not? I cannot understand where the protection of the public comes in, in this case, or where any protection is needed. I do not think that several known and recognized methods of healing, radically different in their theories and practice, can be thrown by the Legislature into a common class, and all practitioners compelled to submit to a certain qualification that would only fit the applicant for one of such methods and that a method which he repudiates as entirely wrong, especially where it does not appear that any special knowledge is necessary for the application of the method, which he desires to practice.