JOŸNER v. STATE.

(Division A.   March 14, 1938.)

[179 So. 573.   No. 33039.]

Jeff Collins, of Laurel, for appellant.

·  **W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

**McGehee, J.,** delivered the opinion of the court.

The appellant, who is licensed to engage in the practice of chiropractics in this State, which is generally defined to be a philosophy, science, and art dealing with the adjustment of the articulations of the spinal column by hand for the correction of the cause of disease and other bodily ailments, was tried and convicted in the circuit court of Jones county for unlawfully practicing medicine as a physician without first having been examined and having obtained a license therefor, as required by law. From this conviction, sentence, and judgment of the court, he prosecutes this appeal.

The indictment specifically charged that the accused treated by the application of medicine, and attempted to remove by operation with instruments, the tonsils of

Allison Welsh, a human being, for which he received a fee, without being examined and licensed so to do.

Section 1099 of the Code of 1930, as amended by chapter 279 of the Laws of 1932, makes it unlawful to practice as a physician or surgeon under such circumstances.

Section 5858 of the Code of 1930 defines the practice of medicine as follows: ''The practice of medicine shall mean to suggest, recommend, prescribe, or direct for the use of any person, any drug, medicine, appliance, or other agency, whether material or not material, for the cure, relief, or palliation of any ailment or disease of the mind or body, . . . after having received, or with the intent of receiving therefor . . . any . . . compensation.''

The license issued under the laws of our State to a physician entitles the recipient thereof to practice as a physician or surgeon, the two being recognized as members of the same profession—that of practicing medicine.

The proof on the part of the State disclosed that on the occasion complained of the appellant examined the patient's tonsils, found that they contained pus, recommended that they should be removed, and treated the cavity of his mouth with a liquid which had the effect of benumbing or deadening the walls of the mouth and his tongue; that the appellant told him at the time that this liquid was an anaesthetic; and that he then inserted into the diseased tonsil a pronged needle and applied electric current in treating the same as a means of removing them; and charged and received a fee of $35 for the several treatments administered in this manner.

The testimony of the appellant denied that the liquid was a medicine or anaesthetic, and claimed that the liquid was ''Nature's Aid'' put out by Pat James, and which is labeled as a natural nonpoisonous germicidal antiseptic and recommended on the label as good for indigestion, ptomaine poison, cuts, etc. A bottle of this remedy was introduced in evidence, and, when the patient tasted it

at the trial, he denied that it was the same liquid applied to his mouth by the appellant. There was no denial by appellant that he used the pronged needle in treating the tonsils and applied the electric treatment.

In the case of Redmond v. State, 152 Miss. 54, 118 So. 360, 365, it is said that "under the statute, the medicine need not be a drug, if it is a medicine; that is, it need not be any standard drug used in the pharmacopoeia, or used by druggists and physicians, so long as it is a healing agency, and claimed to be, and sold for profit, or with the expectation of receiving a profit." The liquid in question was not sold for a profit, or otherwise, by the appellant in the case at bar; neither was it suggested, recommended, or prescribed by him for the cure of the diseased tonsils, but rather for the palliation of the ailment during the process of its treatment by the insertion of the needle and application of electricity, as an appliance, or other agency, within the meaning of section 5858 of the Code of 1930, hereinabove quoted from.

The conflict in the evidence as to whether the liquid used was a medicine or anaesthetic instead of mineral water was resolved by the jury against the appellant, and the probability or improbability of undertaking to insert a needle in a tonsil sore enough to contain a pus formation and apply an electric current thereto without using an anaesthetic was peculiarly a question for the jury.

Recurring now to the question of whether the facts found by the verdict of the jury constitute the practice of medicine or surgery, we find that chiropractic is defined in the new Century Dictionary as a "system of healing which treats disease by manipulation of the spinal column." The term "chiro" is derived from the Greek word "Χειρ," meaning hand, and the term "practice" from the Greek word "Πρακτικη" meaning practical science, or, in other words, the practice of a

science by hand. Surgery is defined in the law dictionaries as being limited to manual operations, usually performed by surgical instruments or appliances, Ballentine's Law Dictionary, p. 1256; Nelson v. State Board of Health, 108 Ky. 769, 57 S. W. 501, 50 L. R. A. 383, as distinguished from the practice of medicine which includes the use of medicine and drugs for the purpose of either curing, mitigating or alleviating bodily diseases. A physician is defined in the standard dictionaries as one legally qualified and engaged in the general practice of medicine as distinguished from one likewise skilled in the art of healing who specializes in surgery, that is to say, surgeons are also physicians, and physicians may practice surgery. But the treatment of disease by the use of surgical instruments and other appliances, as distinguished from treatment by hand, as well as the use of medicine or drugs (except where permission is granted to dentists to use an anaesthesia), and treatment by means of electricity, known as electrotherapy, are methods commonly adopted by physicians and surgeons, as taught in their institutions, established by their highest authorities in the field of surgical and medical science, and, by general acceptation, regarded as pertaining peculiarly to these professions.

Electrotherapy is defined in medical jurisprudence as the use of different forms of electric machines for therapeutic purposes, and before an electrotherapist can follow his profession he must obtain, at least in some states, a license authorizing him to practice in that particular field. This practice has not been recognized in our state as a distinct science, separate and apart from the field of medicine or surgery; and, since the use of electrical appliances for the treatment of disease is ordinarily regarded as pertaining to these particular fields, it is not lawful to engage in the practice of these methods without being licensed as a physician and surgeon.

In Herzog's Medical Jurisprudence, section 112, page

89, it is said that limited practitioners are authorized under the laws of some states, and that they are limited to the practice of one or more branches of medicine, or some special system for treating disease, and in which are chiropractors, osteopaths, electrotherapists, and others, the practice of chiropractics and electrotherapy being recognized as separate and distinct arts or sciences. Each practitioner is required, by law, to practice his profession according to the established practice of his own particular field, as recognized under the laws of his own state.

Appellant was authorized to practice chiropractics under his license issued to him by this State, but not to engage in the use of any methods pertaining to the practice of medicine and surgery. In the case of State Board of Medical Examiners of New Jersey v. O'Neill, 143 A. 814, 6 N. J. Misc. 1075, it was held that an osteopath was guilty of practicing medicine when he used electrical appliances. It was held in the case of State Board of Medical Examiners v. DeBaun, 147 A. 744, 7 N. J. Misc. 1040, by the Supreme Court of New Jersey, that a licensed chiropractor using electrical instruments was guilty of practicing medicine and surgery, and was not practicing chiropractics when using such appliances.

From these views that we have expressed in this opinion, it follows that there was no error in the refusal of the instructions complained of, or the exclusion of the evidence offered by the appellant attempting to show that the National School of Chiropractics, which he attended, taught as a part of the course of study the use of the methods adopted by him in treating the patient in question. The sole issue upon the trial was whether his treatment constituted the practice of medicine and surgery as defined in our statute, and in the decisions of the courts.

The case of Hayden v. State, 81 Miss. 291, 33 So. 653, 95 Am. St. Rep. 471, is so dissimilar to this case on the

facts that it cannot be considered authority for appellant's contention. We have many chiropractors practicing their art or science by hand, in this State, according to its laws and the definition and true meaning of that term, and who are enjoying the respect and confidence of the public in their efforts to administer to human illness in their particular line of endeavor; and practically all of them are content not to depart from their own profession of treating disease by the manipulation of the spinal column by hand, or at least not to invade the field of medicine and surgery.

The judgment and sentence of the court below must be affirmed.

Affirmed.