A. J. HAHN,

*Plaintiff in Error,*

vs.

THE STATE OF WYOMING,

*Defendant in Error.*

(No. 2790; March 18th, 1958; 322 Pac. (2d) 896)

For the plaintiff in error the cause was submitted upon the brief and also oral argument of Fred W. Layman of Casper, Wyoming.

For the defendant in error the cause was submitted upon the briefs of Thomas O. Miller, Attorney General, and Arthur F. Fisher, Assistant Attorney General, both of Cheyenne, Wyoming, and oral argument by Mr. Miller.

Heard before Blume, C.J. and Harnsberger and Parker, JJ.

## OPINION

Mr. Chief Justice BLUME delivered the opinion of the court.

In this case A. J. Hahn was charged and convicted by a jury of practicing medicine without a license. The court sentenced him to 90 days in the county jail and to pay a fine of $300 plus costs of prosecution. From that conviction and sentence the defendant below has brought his case to this court by petition in error. We shall hereafter refer to the petitioner in error as defendant just as in the court below.

The defendant professed to be a doctor of naturopathy, which is defined by him as "the general practice of natural therapy of using those things which are natural to nature. Processes of heat, light, water, electricity, vitamins, minerals, all of those things which are natural to nature." He testified that he had received his schooling in this profession from the Naturopathic Institute of Los Angeles, California, during the period from 1931 to 1935; that his training during this period continued nine months out of each of the four years; and that such school is no longer in existence. In the fall of 1944 the defendant took up resi-

dence in Wyoming. He made application to the Wyoming State Board of Medical Examiners in Cheyenne so as to acquire a naturopathic license. After being informed that there was no board for the licensing of naturopathy and that such practice or profession was not included within the Wyoming State Health Department, the defendant then made application to the Wyoming State Board of Chiropractic Examiners for a license to practice chiropractic, but such was refused him for the reason that he was not a graduate of a chiropractic college or school. Thereafter the defendant made his home in Casper, Wyoming, and proceeded to engage in the practice of what he calls naturopathy.

The witness, James R. Smith, on March 21, 1955, punched holes in notebook paper with an electric drill which resulted in two work blisters appearing on one of Mr. Smith's hands. The blisters were situated on the palm of his right hand. On March 23, 1955, this hand was badly swollen, red in color, and inflamed. He was referred to the defendant in this case by a Mr. Kintzel. Smith accordingly sought the services of defendant. He and his wife testified they were led to believe that defendant was a licensed medical physician. The defendant informed Smith that he perhaps had blood poisoning and treated the hand by various kinds of ointment. The treatment was continued on the average of twice a week for a period of two months, and during that period the defendant prescribed various ointments and salves which were applied by the defendant to the right hand of Smith. Defendant also prescribed and administered mineral packs, Indian chickweed, ointment and slippery elm to Mr. Smith's hand. Further, Smith, on the advice of defendant, bathed his hand in "green soap" and Epsom salts while at home and during that period he used approximately

165 pounds of Epsom salts while soaking his hand. As a result of the treatment by the defendant the right hand was left deformed. We need not state the exact deformity.

On May 28, 1956, a criminal complaint was filed by James R. Smith in the Justice Court in and for Natrona County, charging defendant with unlawful practice of medicine. The defendant waived preliminary hearing and was bound over to the District Court for Natrona County for trial. On May 28, 1956, an information was filed in the District Court of Natrona County charging defendant as hereinafter set forth. The original information failed to allege that the defendant had no license, so after a motion to quash was filed by the defendant, the state was permitted to insert the term "without being licensed so to do." The information as so amended charged the defendant in four counts as follows:

"Count I:

"did wilfully and unlawfully on or about the 15th day of April, 1955, hold himself out to the public as being engaged within this State in the diagnosis and treatment of diseases or injuries or deformities of human beings, without being licensed so to do.

"Count II:

"did wilfully and unlawfully on or about the 15th day of April, 1955, perform surgery for the intended relief of physical ailments of JAMES R. SMITH with intentions of receiving therefor compensation, without being licensed so to do.

"Count III:

"did wilfully and unlawfully on or about the 15th day of April, 1955, maintain an office for the reception,

examination and treatment of a person suffering from disease or injury of the body, without being licensed so to do.

"Count IV:

"did wilfully and unlawfully on or about the 15th day of April, 1955, attach to his name the word 'Doctor' indicating that the said A. J. HAHN was engaged in the practice of medicine as defined in Sec. 37-2007, Wyoming Compiled Statutes, 1945; without being licensed so to do.

"contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Wyoming."

The State abandoned the charge under Count IV. The jury found the defendant not guilty under Count 11 and found him guilty only under Counts 1 and III.

The statutes applicable in this case are as follows: "Any person shall be regarded as practicing medicine, within the meaning of this Act [§§ 37-2001—37-2017], who shall in any manner hold himself out to the public as being engaged within this state in the diagnosis and treatment of diseases or injuries or deformities of human beings; or who shall suggest, recommend or prescribe any form of treatment for the intended palliation, relief or cure of any physical or mental ailment of any person with the intention of receiving therefor either directly or indirectly, any fee, gift or compensation whatsoever; or who shall maintain an office for the reception, examination and treatment of any person suffering from disease or injury of body or mind; or who shall attach the title of M.D., surgeon, doctor or any other word or abbreviation to his name indicative that such person is engaged in the practice of medicine as hereinafter defined." § 37-2007, W.C.S. 1945.

"Any person practicing medicine or surgery within the meaning of this Act [§§ 37-2001—37-2017] in this

state, without complying with the provisions of this act, or without having first received and recorded a certificate from the state board of medical examiners as provided by law, shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be punished by a fine of not less than fifty dollars [$50.00] nor more than three hundred dollars [$300.00], or by imprisonment in the county jail for not more than one year or both * * *." § 37-2014, W.C.S. 1945.

After the information in this case was amended, the defendant again made a motion to quash. Various reasons are now advanced by counsel for the defendant why the motion to quash should have been sustained. It is contended that the information should have negatived the fact that the defendant had no license under other provisions of the law; for instance, under the law governing dentists and chiropractors. And counsel thinks that the case of State v. Butler, 40 Wyo. 404, 278 P. 563, is in point. In that case the trial court had sustained a motion to quash and required a more specific statement of the facts. This court held that it would not reverse the trial court unless its discretion had been abused and that this court could not hold that to be true in that particular case. We do not consider that case in point. It is stated in 70 C.J.S. Physicians and Surgeons § 25b, p. 922:

"It is necessary to allege, in terms broad enough to meet the requirements of the statute, that accused did not have a license, certificate, or other authority required by the statute. It is not necessary, however, to negative the possession of a license by accused under a statute other than that under which the offense is charged. * * *"

In other words, it was not necessary to allege that the defendant did not have authority to practice dentistry, chiropractic and other professions.

Defendant seems to also contend that the information should have alleged that defendant had no certificate or license from the State Board of Medical Examiners as provided by § 37-2014, W.C.S. 1945. It would doubtless have been better if that direct charge had been made. The information filed herein was not a model pleading. However, the amended information in this case is substantially like the informations which were held to be sufficient in the case of State v. Wong Sun, 114 Mont. 185, 133 P.2d 761, and Dye v. State, 28 Ala.App .473, 188 So. 74, certiorari denied, 237 Ala. 587, 188 So. 75. When the information alleges, as it did in this case, that the unlawful practice of medicine is contrary to the form of the statute in such case made and provided, it would seem to refer to the provision contained in § 37-2014, W.C.S. 1945, providing that the license or certificate to be granted for one practicing medicine must be granted by the State Board of Medical Examiners. We might mention in this connection that the information refers to a license whereas § 37-2014 refers to a certificate. We think, however, that the terms may be regarded as synonymous. Dye v. State, supra.

Counsel also contends that the information should have charged that the defendant engaged in the practice of medicine and received compensation therefor. An examination of the statute, however, discloses that practicing medicine and receiving compensation therefor is a separate offense, distinct from those alleged in the amended information herein. We think, accordingly, that the assignment of error in this connection must be overruled.

Counsel complains of a statement to the jury by the prosecuting attorney that the defendant was not prosecuted for practicing naturopathy. Of course that

statement is strictly true. Defendant was prosecuted as charged in the information which makes no reference to naturopathy. We do not think, as counsel claims, that the statement by the prosecuting attorney prevented the defendant from having a fair trial. It is also contended that defendant was seriously prejudiced by the statement of the prosecuting attorney in his closing argument in which he declared that the defendant admitted his guilt under Counts I and III, the only counts which are in question on this appeal. The defendant in this case took the witness stand and admitted that he held himself out to the public as being engaged in this state in the treatment of human diseases and the diagnosis thereof; that he maintained an office for that purpose; and that he had no license that would permit him to do so. Compare this admission on the part of the defendant with the charge in Counts I and III of the amended information and it becomes apparent at once that the statement of the prosecuting attorney in this connection stated the facts correctly and, when that is true, no error could be predicated thereon.

The defendant stated that whatever he did he did as a naturopath, and counsel contends that that alters the situation entirely. We do not think so. Counsel claims that naturopathy is a separate science, distinct from the practice of medicine, and that hence the defendant could not be found guilty under the charges made against him. But it would seem to be quite clear, and the authorities hold, that naturopathy is simply one of the methods of practicing medicine. For instance, it is stated in People v. Johnerson, Co.Ct., 49 N.Y.S.2d 190, 196, 197, appeal dismissed, App.Div., 51 N.Y.S.2d 221, as follows:

"It has always been considered that the practice of medicine means and includes the practice of any of the

so-called healing arts. The Legislature, in enacting a broad and comprehensive statute, intended thereby to protect the members of the public from untrained, unskilled and inefficient practitioners in any healing art. It is immaterial what method is used to effect a cure, or to relieve a person of pain. The true test is whether or not an attempt has been made by some manner or means to effect such cure or to relieve a person from some pain or ailment or physical condition complained of."

That the practice of naturopathy is included within the practice of medicine as defined by the statute is also held in many other cases. State ex rel. Shenk v. State Board of Examiners in the Basic Sciences, 189 Minn. 1, 250 N.W. 353; Davis v. Beeler, 185 Tenn. 638, 207 S.W.2d 343, appeal dismissed, 333 U.S. 859, 68 S.Ct. 745, 92 L.Ed. 1138; Aitchison v. State, 204 Md. 538, 105 A.2d 495, certiorari denied, 348 U.S. 880, 75 S.Ct. 116, 99 L.Ed. 692; Hitchcock v. Collenberg, D.C. Md., 140 F. Supp. 894, affirmed 353 U.S. 919, 77 S.Ct. 679, 1 L.Ed.2d 718; Dantzler v. Callison, 230 S.Car. 75, 94 S.E.2d 177, appeal dismissed, 352 U.S. 939, 77 S.Ct. 263, 1 L.Ed.2d 235. These five cases are recent cases and specifically consider the subject of naturopathy in the light of the statutes forbidding the practice of medicine without a license. In all of them, statutory provisions relating thereto similar to those in this state were upheld as valid. See also the following cases: State v. Smith, 233 Mo. 242, 135 S.W. 465, 469, 33 L.R. A.N.S. 179; Territory v. Newman, 13 N.M. 98, 79 P. 706, 707 (dissenting opinion at 79 P. 813), 68 L.R.A. 783; Ex parte Halsted, 147 Tex.Cr.R. 453, 182 S.W. 2d 479, 482; State ex rel. Kansas State Board of Medical Registration and Examination v. Martin, 155 Kan. 801, 130 P.2d 601, 604; Underwood v. Scott, 43 Kan. 714, 23 P. 942, 943; 41 Am.Jur. Physicians and Surgeons § 23, p. 151. As a matter of fact, the practice of what is now called naturopathy has from time im-

memorial, at least to the extent then known, been considered simply as an integral part of the practice of medicine. See I, Adams, The Genuine Works of Hipprocrates, 1886, p. 240, et passim; Brock, Galen on the Natural Faculties, 1916, Introduction, p. x; 15 Ency. Britannica, 1950, p. 198, under the subject of the History of Medicine. We see no good reason why at this late date we should consider it in a different light.

It follows of course, and our statute is clear, that the practice of naturopathy cannot, as counsel for defendant contends it should, be regarded as a separate and distinct profession like that of dentistry for instance, nor can we see any good reason why the legislature may not for the benefit of society require that those who practice the healing art should know and keep up with the improvements and advanced learning in that art. The health and well-being of the members of society is too important to justify the failure to make requirements commensurate with the advancement of civilization. There is nothing to prohibit the practice of naturopathy provided that under our statute the practitioner has the learning of a physician and surgeon and has been admitted to practice as such in this state. Such a requirement is valid. Dantzler v. Callison, supra, where the court said, among other things, 94 S.E. 2d, at page 188:

"* * * May we ask, after all, why should not persons who hold themselves out to be doctors, regardless of what they may otherwise profess, be required to have the training of a medical doctor?"

A like statement is found in Davis v. Beeler, supra. It is true that the legislature has licensed dentists and chiropractors and other persons who in some manner attempt to exercise part of the healing art, but simply because the legislature made special regulations for

these groups did not require it to make similar regulations concerning naturopaths. It had a perfect right to refuse to provide such regulations relating to them. Hitchcock v. Collenberg, supra; Aitchison v. State, supra.

Counsel for defendant contends that since the jury found the defendant not guilty on Count II of the information, it was precluded from finding him guilty also on Counts I and III. Count II relates to surgery. We find no merit in that contention. See State v. Bresee, 137 Iowa 673, 114 N.W. 45, 24 L.R.A.N.S. 103.

It is contended that the court should have given an instruction defining the practice of medicine. It is difficult to see, however, how the court could have made that matter plainer than as found in the statute itself.

The judgment and sentence of the court fixed the costs at $344.25; of this amount $84 was for bailiff's costs and $120 for the jury with mileage and costs of meals. That was an error and costs in this case should be taxed in accordance with the decision of Arnold v. State, Wyo., 306 P.2d 368, 378.

Defendant in oral argument urged that under the circumstances the sentence was too severe. That is a matter addressed to the sound discretion of the court below. Now that this court has for the first time expressed its views concerning the statutory crime involved, the trial court may now care to take that fact into consideration.

We find no other reversible error in the record and with the foregoing modifications the judgment of the trial court is affirmed.

Modified and Affirmed.