Russell F. PARAVECCHIO, D.M.D.,
Appellant (Plaintiff),

v.

MEMORIAL HOSPITAL OF LARAMIE
COUNTY and DePaul Hospital,
Appellees (Defendants).

No. 87–22.

Supreme Court of Wyoming.

Sept. 17, 1987.

Rehearing Denied Oct. 7, 1987.

John J. Metzke and Thomas N. Long of Hirst & Applegate, Cheyenne, for appellant.

W. Perry Dray and Gregory C. Dyekman of Dray, Madison & Thomson, P.C., Cheyenne, for appellee Memorial Hosp. of Laramie County.

David H. Carmichael of Carmichael, McNiff & Patton, Cheyenne, for appellee DePaul Hosp.

Jane A. Villemez of Charles E. Graves & Associates, Cheyenne, and Hugh A. Burns of Burns & Figa, P.C., Denver, Colo., filed amicus curiae for the American Society of Dentist Anesthesiologists.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT, and MACY, JJ.

BROWN, Chief Justice.

In this case, we are asked to determine whether a person licensed to practice dentistry in Wyoming[1] who has special training and experience in the field of general anesthesia, but is not a licensed physician in Wyoming[2] is authorized to practice general anesthesiology. We hold that appellant's dental license does not authorize the administration of anesthesia for nondental purposes. We affirm the trial court's order dismissing appellant's complaints, each seeking a declaratory judgment.

On March 28, 1984, appellant Russell F. Paravecchio, D.M.D., applied for an appointment of staff anesthesiologist with privileges appropriate to the full practice of anesthesiology from appellees, Memorial Hospital of Laramie County (Memorial), and DePaul Hospital (DePaul). The Departments of Anesthesiology of Memorial and DePaul jointly reviewed appellant's credentials. Memorial's Executive Committee and also its Board of Trustees both denied appellant's application. Appellant requested and received a review of this denial, pursuant to Memorial's by-laws, before Memorial's Joint Hearing Committee. That committee affirmed the initial decisions denying appellant's application. DePaul's Medical Staff Executive Committee similarly denied appellant's request for anesthesiology privileges.

Appellant filed separate suits against Memorial and DePaul raising two general claims and seeking declaratory judgments for relief: (1) a declaration that Wyoming law currently authorizes a dentist who has successfully completed accredited anesthesiology residency training to legally and independently engage in the professional practice of clinical anesthesiology, and (2) a declaration that the denial of hospital privileges in anesthesiology by the appellee hospitals was impermissible. These complaints were amended on May 7, 1986. Both appellee hospitals filed counterclaims also seeking declaratory judgments that the practice of clinical anesthesiology is the practice of medicine as defined by § 33–26–101, W.S.1977, of the Wyoming Medical Practice Act, and that the hospitals acted properly in denying anesthesiology privileges to appellant.

Appellant filed motions to dismiss both of appellees' counterclaims and both appellees filed motions to dismiss appellant's amended complaints. Motions also were made by both appellees to join the Wyoming Board of Medical Examiners and solely by appellee Memorial to join the Wyoming Board of Dental Examiners as indispensable party defendants. A joint motion to consolidate the two cases was made by all three parties.[3]

After a hearing, the trial court ordered that appellant's amended complaints

---

1. Such a license issues pursuant to the Wyoming Dental Practice Act, consisting of §§ 33–15–101 through 33–15–128, W.S.1977 (1986 Cum.Supp.).

2. Such a license issues pursuant to the Wyoming Medical Practice Act, consisting of §§ 33–26–101 through 33–26–152, W.S.1977 (1986 Cum.Supp.).

3. A formal order consolidating the two cases was not filed until January 13, 1987. After August 13, 1986, however, the two cases proceeded as consolidated.

against Memorial and DePaul be dismissed with prejudice, pursuant to Rule 12(b)(6), Wyoming Rules of Civil Procedure, and that the motions made by both Memorial and DePaul to join the Wyoming Board of Medical Examiners as a party to litigation be denied. The effect of the order dismissing appellant's amended complaints was to deny the counterclaims of DePaul and Memorial, neither of which has appealed from that ruling. This appeal followed.

Appellant raises one issue, essentially agreed to by appellees:

"May a documentably competent anesthesiologist practice the full clinical scope of anesthesiology in Wyoming if he or she is licensed by the state of Wyoming as a dentist and is not licensed by the state of Wyoming as a physician."

I

In his first argument, appellant asserts that the scope of dentistry as defined by the Wyoming Dental Practice Act is sufficiently broad to include those procedures necessary in the general practice of anesthesiology by a dentist. He then argues that the delivery of anesthesia may not be considered exclusive to the practice of medicine and therefore, may not be solely limited by the Wyoming Medical Practice Act. We cannot agree.

This case turns on a simple legal question: Does the appellant have the statutory authority in Wyoming to administer general nondental anesthesia under a dental license? Our answer must be based on settled principles of statutory construction. Appellant's extensive arguments regarding his qualifications to practice general anesthesiology are not relevant to this inquiry, and will not be considered.

When interpreting statutes, we must first look to the applicable statute itself giving the words employed by the legislature their plain and ordinary meaning in an attempt to construe legislative intent. *City of Evanston v. Robinson*, Wyo., 702 P.2d 1283 (1985). We also read statutes relating to the same subject together to effectuate legislative intent. *WYMO Fuels, Inc. v. Edwards*, Wyo., 723 P.2d 1230 (1986).

Wyoming statutes define the scope of authorized practice for the general field of medicine as well as many specialized areas of practice, including the field of dentistry.[4] The Wyoming Dental Practice Act, § 33–15–114, W.S.1977 (1986 Cum. Supp.), states in pertinent part:

"(a) Except as provided by paragraph (xii) of this subsection, *any person is deemed to be practicing dentistry within the meaning of this act:*

"(i) Who performs, or attempts, or advertises to perform, or causes to be performed by the patient or any other person, or instructs in the performance of any dental operation or *oral* surgery or dental service of any kind gratuitously or for a salary, fee, money or other remuneration paid, or to be paid, directly or indirectly, to himself or to any other person or agency;

"(ii) Who is a manager, proprietor, operator or a conductor of a place where dental operations, *oral* surgery or dental services are performed;

4. Pursuant to W.S.1977 (1986 Cum.Supp.), the following represents a list of professional persons authorized to "practice medicine" under a license:

Podiatrists—§§ 33–9–101 to 33–9–113.
Chiropractors—§§ 33–10–101 to 33–10–117.
Dentists and Dental Hygienists—§§ 33–15–101 to 33–15–128.
Nurses—§§ 33–21–101 to 33–21–156.
Optometrists—§§ 33–23–101 to 33–23–116.
Pharmacists—§§ 33–24–101 to 33–24–151.
Physical Therapists—§§ 33–25–101 to 33–25–115.
Physicians and Surgeons—§§ 33–26–101 to 33–26–152.
Psychologists—§§ 33–27–101 to 33–27–112.
Veterinarians—§§ 33–30–101 to 33–30–215.
Speech Pathologists and Audiologists—§§ 33–33–101 to 33–33–309.
Clinical Laboratories and Blood Banks—§§ 33–34–101 to 33–34–109.
Hearing Aid Specialists—§§ 33–35–101 to 33–35–121.
Emergency Medical Services—§§ 33–36–101 to 33–36–113.
Radiologic Technologists—§§ 33–37–101 to 33–37–113.

"(iii) Who directly or indirectly by any means or method furnishes, supplies, constructs, reproduces or repairs any prosthetic denture, bridge, appliance or other structure to be worn in the *human mouth,* or places such appliance or structure in the *human mouth* or attempts to adjust the same;

"(iv) Who advertises to the public by any method to furnish, supply, construct, reproduce or repair any prosthetic denture, bridge, appliance or other structure to be worn in the *human mouth;*

"(v) Who diagnoses or professes to diagnose, prescribes for or professes to prescribe for, treats or professes to treat disease, pain, deformity, deficiency, injury to physical condition of *human teeth or jaws, or adjacent structure;*

"(vi) Who extracts or attempts to extract *human teeth,* or corrects or professes to correct malpositions of *teeth or of the jaw;*

"(vii) Who gives or professes to give interpretations or readings of dental roentgenograms;

"(viii) *Who administers an anesthetic of any nature in connection with dental operations;*

"(ix) Who uses the words 'dentist', 'dental surgeon' or 'oral surgeon', the letters 'D.D.S.', 'D.M.D.' or any other words, letters, title or descriptive matter which in any way represents him as being able to diagnose, treat, prescribe or operate for any disease, pain, deformity, deficiency, injury or physical condition of *human teeth or jaws, or adjacent structures;*

"(x) Who states or advertises or permits to be stated or advertised by a sign, card, circular, handbill, newspaper, radio or otherwise that he can perform or will attempt to perform dental operations or render a diagnosis in connection therewith; or

"(xi) Who engages in any of the practices included in the curriculum of an approved dental college;

"(xii) A dental laboratory or dental technician is not practicing dentistry within the meaning of this act when engaged in the construction, making, alteration or repairing of bridges, crowns, dentures or other prosthetic or surgical appliances, or orthodontic appliances if the casts or molds or impressions upon which the work is constructed have been made by a regularly licensed and practicing dentist, and if all crowns, bridges, dentures or prosthetic appliances, surgical appliances or orthodontic appliances are returned to the dentist upon whose order the work is constructed." (Emphasis added.)

In § 33–15–128, W.S.1977 (1986 Cum. Supp.), the act further states in pertinent part:

"(a) As used in this act:

" * * *

"(ii) *'Dentistry'* means the healing art practiced by a dentist which is concerned with the examination, diagnosis, treatment, planning and care of conditions *within the human oral cavity and its adjacent tissues and structures;*

"(iii) *'Dentist'* means a person who performs any *intraoral and extraoral* procedure required in the practice of dentistry and to whom is reserved:

"(A) The responsibility for final diagnosis of conditions within the *human mouth and its adjacent tissues and structures;*

"(B) The responsibility of the final treatment plan of any dental patient;

"(C) The responsibility for prescribing drugs which are administered to patients in the practice of dentistry;

"(D) The responsibility for overall quality of patient care which is rendered or performed in the practice of dentistry regardless of whether the care is rendered personally by the dentist or by a dental auxiliary; and

"(E) Other specific services within the scope of the practice of dentistry.

"(iv) *'Dental'* means pertaining to dentistry." (Emphasis added.)

To find that the practice of general nondental anesthesiology is within the practice of dentistry would be to ignore obvious legislative intent as expressed in the Wyoming Dental Practice Act. We must not ignore clear statutory language and apply statutes to situations that do not reasonably fall within the intended ambit of such laws. *Matter of Higgins*, Wyo., 739 P.2d 129 (1987); *Matter of Abas*, Wyo., 701 P.2d 1153 (1985); *Alco of Wyoming v. Baker*, Wyo., 651 P.2d 266 (1982). Based on the plain and ordinary meaning of the words used in §§ 33–15–114 and 33–15–128, W.S. 1977 (1986 Cum.Supp.), the legislature clearly defined the practice of dentistry by restricting it to the diagnosis and treatment of the human mouth, teeth and jaw, or within the human oral cavity and its adjacent tissues and structures. The legislature *explicitly* limited dental practice in the area of anesthesiology to that "anesthetic of any nature *in connection with dental operations."* § 33–15–114(a)(viii). If appellant desires to practice general nondental anesthesiology he must obtain a license to practice medicine. He cannot do so under a dental license.

▊ Appellant next contends that the general delivery of anesthesia is not exclusive to the practice of medicine as defined by the Wyoming Medical Practice Act, and is not necessarily limited by those provisions. Appellant argues that because § 33–26–101, W.S.1977,[5] does not expressly encompass general anesthesiology in defining the practice of medicine, it does not limit the general anesthesiological activities appellant wants to practice. This, it is urged, obviates the requirement that appellant possess a medical license to practice

general nondental anesthesiology under § 33–26–112, W.S.1977 (1986 Cum.Supp.).

We hold that the practice of general nondental anesthesia is squarely within the purviews of the Wyoming Medical Practice Act. Anesthesiology is defined in Stedman's Medical Dictionary (5th Unabridged Lawyer's Edition, 1982), as:

"The *medical* specialty concerned with the pharmacological, physiological and clinical basis of anesthesia and related fields, including resuscitation, intensive respiratory care and pain." (Emphasis added.)

In the case of *State v. Catellier*, 63 Wyo. 123, 179 P.2d 203, 218–219 (1947), we stated:

" * * * [T]he cases as a whole indicate that the administration [of anesthetic] thereof is a part of the practice of medicine, and we think that that is the general understanding. The administration of an anesthetic in connection with the setting of the shoulder was, we think, part of the remedy applied by him. * * * In *Joyner v. State*, 181 Miss. 245, 179 So. 573, 575, 115 A.L.R. 954 [1938] [it was held that] an anesthetic (local, in that case) used by a chiropractor for compensation, in taking out a tonsil was in violation of the law prescribing the practice of medicine. So we think that in the case at bar the defendant violated the statute of this state which defines the practice of medicine, unless the shoulder was set and the anesthetic was given under the permissive condition contemplated in the statute."

While the Wyoming Medical Practice Act does not specifically provide for the inclusion of general anesthesiology, we believe the legislature intended that as long as specific statutes had not been enacted to cover narrowed areas of medicine, such

5. "Any person shall be regarded as practicing medicine, within the meaning of this act, who shall in any manner hold himself out to the public as being engaged within this state in the diagnosis and treatment of diseases or injuries or deformities of human beings; or who shall suggest, recommend or prescribe any form of treatment for the intended palliation, relief or cure of any physical or mental ailment of any person with the intention of receiving there-

for, either directly or indirectly, any fee, gift or compensation whatsoever; or who shall maintain an office for the reception, examination and treatment of any person suffering from disease or injury of body or mind; or who shall attach the title of M.D., surgeon, doctor or any other word or abbreviation to his name indicative that such person is engaged in the practice of medicine as hereinafter defined."

areas are to be measured under the broad statutory scheme covering the general practice of medicine. In the case of *Hahn v. State,* 78 Wyo. 258, 269–271, 322 P.2d 896, 900–901 (1958), the appellant claimed that naturopathy was a distinct and nonmedical science. He claimed that he could not be found guilty under charges against him based on a "general medicine" statute, contentions similar to those espoused by appellant in this case. We stated:

" * * * [I]t would seem to be quite clear, and the authorities hold, that naturopathy is simply one of the methods of practicing medicine. For instance, it is stated in *People v. Johnerson,* Co.Ct., 49 N.Y. S.2d 190, 196, 197, appeal dismissed, App. Div., 51 N.Y.S.2d 221, as follows:

" 'It has always been considered that the practice of medicine means and includes the practice of any of the so-called healing arts. *The Legislature, in enacting a broad and comprehensive statute, intended thereby to protect the members of the public from untrained, unskilled and inefficient practitioners in any healing art.* It is immaterial what method is used to effect a cure, or to relieve a person of pain. The true test is whether or not an attempt has been made by some manner or means to effect such cure or to relieve a person from some pain or ailment or physical condition complained of.'

" * * *

"It follows of course, and our statute is clear, that the practice of naturopathy cannot, as counsel for defendant contends it should, be regarded as a separate and distinct profession like that of dentistry for instance, *nor can we see any good reason why the legislature may not for the benefit of society require that those who practice the healing art should know and keep up with the improvements and advanced learning in that art. The health and well-being of the members of society is too important to justify the failure to make requirements commensurate*

*with the advancement of civilization.* There is nothing to prohibit the practice of naturopathy provided that under our statute the practitioner has the learning of a physician and surgeon and has been admitted to practice as such in this state. Such a requirement is valid. * * *

" ' * * * May we ask, after all, why should not persons who hold themselves out to be doctors, regardless of what they may otherwise profess, be required to have the training of a medical doctor?'

"A like statement is found in *Davis v. Beeler,* [185 Tenn. 638, 207 S.W.2d 343 (1947), appeal dismissed 333 U.S. 859, 68 S.Ct. 745, 92 L.Ed. 1138 (1948)]. *It is true that the legislature has licensed dentists and chiropractors and other persons who in some manner attempt to exercise part of the healing art, but simply because the legislature made special regulations for these groups did not require it to make similar regulations concerning naturopaths.* It had perfect right to refuse to provide such regulations relating to them. [Citations.]" (Emphasis added.)

See also, *State v. Catellier,* supra.

Our interpretation that anesthesiology is to be considered the practice of medicine is further supported by other jurisdictions with statutory schemes similar to that of Wyoming. In *Spiro v. Highlands General Hospital,* Fla.App. 2 Dist., 489 So.2d 802, 803 (1986), appellant, a dentist, sought to practice general anesthesiology in a hospital setting. In rejecting appellant's argument the court stated:

"A dentist cannot practice the art of medicine without a medical license, despite a specific training in a field of medicine, anesthesiology in this case, which is, nevertheless, short of the required training necessary to obtain a medical license. The appellant does not have a medical license and, therefore, cannot practice anesthesia in a medical form."

See also *Everett v. State,* 99 Wash.2d 264, 661 P.2d 588 (1983), where the court held that anesthesia administered in connection with nondental surgery was a medical treatment requiring a medical license.

The anesthesiology desired to be practiced by appellant is nondental in nature. We hold that the restrictive language as used by the legislature in the Wyoming Dental Practice Act limits those licensed by that act to the practice of anesthesiology solely for purposes in connection with the oral cavity region. We also hold that the practice of general nondental anesthesiology is considered the practice of medicine as defined by the Wyoming Medical Practice Act. For appellant to legally practice in Wyoming, he must comply with the Wyoming Medical Practice Act. Appellant is not licensed to practice medicine in Wyoming under that act; consequently, appellees Memorial and DePaul could not legally staff appellant as an anesthesiologist.

## II

In appellant's second argument, he contends that any denial of the right to practice clinical general anesthesiology by individuals competent to practice that endeavor for the lack of a physician's license constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and the Wyoming State Constitution. Appellant asserts that he is the equal of a licensed physician anesthesiologist because he has been declared a qualified anesthesiologist by an accredited residency program. He claims that this denies him equal protection under the law because he cannot practice the same as licensed physician anesthesiologists.

The Fourteenth Amendment to the Constitution of the United States of America provides:

"All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; *nor deny to any person within its jurisdiction the equal protection of the laws.*" (Emphasis added.)

Art. 1, § 34 of the Constitution of the State of Wyoming provides:

"All laws of a general nature shall have a uniform operation."

When dealing with this aspect of appellant's argument we must first differentiate between two equal protection tests. We recently stated in *Baskin v. State ex rel. Worker's Compensation Division*, Wyo., 722 P.2d 151, 155–156 (1986):

"* * * According to one test if a fundamental interest is involved the court must apply a standard of strict scrutiny, that is the statutory classification must be necessary to achieve a compelling state interest and there must be no less intrusive alternative means available. *Washakie County School District No. One v. Herschler*, Wyo., 606 P.2d 310, cert. denied sub nom. *Hot Springs County School District Number 1 v. Washakie County School District Number 1*, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980). If an ordinary interest is involved, however, the classification is only required to bear a rational relationship to a legitimate state objective. * * *"

Under equal protection analysis this case presents no previously recognized suspect, "near" suspect, or invidiously discriminatory classification and since it does not involve a recognized fundamental or "quasi" fundamental right. The proper standard of review is the rational basis test. *Baskin v. State ex rel. Worker's Compensation Division*, supra; and *O'Brien v. State*, Wyo., 711 P.2d 1144 (1986).

Under this standard of review the challenged statutes are presumed constitutional and appellant carries the heavy burden of proving them unconstitutional by clear and exact proof beyond a reasonable doubt. This burden is heavy because we will assume any conceivable state of facts that can reasonably sustain the challenged statutory classification as having existed when the statute was passed. *Baskin v. State ex rel. Worker's Compensation Division*, supra. A classification is not infirm, even though imperfect, if it has some reasonable distinction from other subjects of a like general character, which distinc-

tion bears some reasonable relation to the legitimate objectives and purposes of the legislation. See *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); and *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

Appellant argues that the distinction between a licensed physician general anesthesiologist and others educated in anesthesiology lacks a reasonable relationship to any legitimate state interest. This argument is specious. The state has an obvious legitimate interest in insuring that persons practicing general medicine be licensed in the interest of the health, safety and welfare of its citizens. The right to practice medicine is a property right, but it is a conditional right, subject to the police power of the state. *State v. Hoffman*, Utah, 733 P.2d 502 (1987); *Dandridge v. Williams*, supra; *Dent v. West Virginia*, W.Va., 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889). In *Dent v. West Virginia*, supra, it was said that every person may follow any lawful calling, business or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex, and condition. The power of the state to provide for the general welfare of its people authorizes it to prescribe such regulation as in its judgment will secure or tend to secure the people against the consequences of ignorance and incapacity as well as health and safety. No offense was dealt the Equal Protection clause of the United States Constitution or the Wyoming State Constitution by requiring that general nondental anesthesiologists be properly licensed as physicians under the Wyoming Medical Practice Act.

We conclude by recognizing that when reviewing Rule 12(b)(6), W.R.C.P., dismissal cases, we apply the standard of review recently set out in *Mostert v. CBL & Associates and American Multi-Cinema, Inc.*, Wyo., 741 P.2d 1090, 1092 (1987):

"According to our standard of review we will sustain a dismissal of a complaint only if it shows on its face that the plaintiff was not entitled to relief under any set of facts. *Johnson v. Aetna Casualty & Surety Co. of Hartford*, Wyo., 608 P.2d 1299 (1980). In considering such a motion, the 'facts alleged in the complaint are admitted and the allegations must be viewed in the light most favorable to plaintiffs.' *Moxley v. Laramie Builders, Inc.*, Wyo., 600 P.2d 733, 734 (1979). Dismissal is a drastic remedy, and is sparingly granted. *Harris v. Grizzle*, Wyo., 599 P.2d 580, 583 (1979). In *Lewis v. State Board of Control*, Wyo., 699 P.2d 822, 824 (1985), we said:

"' * * * In reviewing a dismissal under Rule 12(b)(6) [W.R.C.P.], this court will only sustain such dismissal if the complaint shows on its face that the plaintiff is not entitled to relief. *Johnson v. Aetna Casualty and Surety Co. of Hartford, Conn.*, Wyo., 608 P.2d 1299 (1980), appeal after remand 630 P.2d 514, cert. denied 454 U.S. 1118, 102 S.Ct. 961, 71 L.Ed.2d 105 (1981), reh. denied 455 U.S. 1039, 102 S.Ct. 1743, 72 L.Ed.2d 157 (1982). Therefore, we treat as true all the allegations of contestants' complaint. *Moxley v. Laramie Builders, Inc.*, Wyo., 600 P.2d 733 (1979).' "

The instant dismissal was proper under this standard. Affirmed in all respects.

URBIGKIT, J., dissents.