**Ike KING, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 88–297.

Supreme Court of Wyoming.

Sept. 20, 1989.

Steven E. Weerts, Sr. Asst. Public Defender, and Mike Cornia, Appellate Counsel, of Public Defender Program, for appellant.

Joseph B. Meyer, Atty. Gen., John Renneisen, Deputy Atty. Gen., and Mary B. Guthrie, Sr. Asst. Atty. Gen., for appellee.

Before CARDINE, C.J., and
THOMAS, URBIGKIT, MACY and
GOLDEN, JJ.

MACY, Justice.

Appellant Ike King was convicted by a jury of aggravated assault and battery as proscribed by Wyo.Stat. § 6–2–502(a)(ii) (1977). On appeal, he presents numerous

contentions of error in the proceedings below relating to the conduct of the prosecutor and the jury, the introduction of certain evidence, the assessment of various costs upon him as part of his sentence, the propriety of a jury instruction, and the failure to grant a new trial.

We affirm but modify the judgment and sentence with respect to costs.

■ The specific issues raised by appellant, as rephrased in the form of questions for clarity, are as follows:[1]

1. Was the trial court's denial of appellant's motion for a new trial error?

2. Was plain error committed when the trial court failed to grant a mistrial after prosecutorial misconduct took place which denied appellant a fair trial?

3. Was plain error committed during the closing argument when the prosecutor questioned why appellant had not called certain witnesses to testify?

4. Was it error to allow Patricia Koryn's preliminary hearing testimony to be used at trial when the State did not use reasonable means to subpoena her?

5. Did the trial court err in failing to regulate or stop note-taking by the jury?

6. Could the trial court legally and constitutionally require appellant to repay the costs of his representation by the public defender?

7. Is the statutory scheme allowing for the recoupment of the costs of prosecution unconstitutional, and was the assessment of certain costs reasonable?

8. Did the trial court err by failing to suppress evidence and by allowing the State to augment the record concerning the motion to suppress?

9. Did the trial court err in instructing the jury and in allowing testimony on intimidation of a witness?

The evidence produced at trial, with conflicts properly resolved in favor of the State, *Griffin v. State,* 749 P.2d 246 (Wyo. 1988), revealed the following facts. At 10:30 p.m. on January 29, 1988, Officer Mark Abraham of the Riverton police department issued a traffic ticket to appellant for driving without an operable license plate light. In addition to the inoperable license plate light, Officer Abraham initially stopped appellant for exceeding the speed limit and changing lanes without signaling. At this time, appellant was driving a green 1968 GMC pickup. After being stopped, appellant got out of his pickup, walked back to Officer Abraham, and handed him his driver's license. As a safety precaution, Officer Abraham walked over to appellant's pickup and shined his flashlight through the window into the interior in order to determine whether other occupants were in the vehicle. He observed a club in the pickup which he described at trial as resembling an axe or pick handle wrapped in black tape. After ascertaining that no other occupants were in the vehicle, Officer Abraham issued the citation, and appellant left.

Later that evening, sixteen-year-old Guy Muggelberg, accompanied by his girl friend, Sheila Baldes, was driving his car east down West Main Street in Riverton when a car suddenly pulled out directly in front of him, causing him to brake sharply and swerve to avoid a collision. Muggelberg pulled along side the other vehicle, which he described as a "[b]rownish gold, midsized Oldsmobile." Both drivers rolled down their windows, and a verbal exchange occurred in which Muggelberg called the

---

**1.** The State argues that this appeal should be dismissed because appellant did not include a separately designated statement of the issues in his brief as required by W.R.A.P. 5.01(2). We have stated that failure to list the issues is a serious error for which this Court may refuse to consider the contentions of the party violating the rule. *Cline v. Safeco Insurance Companies,* 614 P.2d 1335 (Wyo.1980). In the instant case, however, the table of contents in appellant's brief clearly identifies the issues in the case, although they are there designated as arguments, and we are not placed in the position of having to frame the issues for a party. We agree with counsel for appellant that, under the circumstances, we should not penalize appellant for this oversight by counsel, and we will not dismiss the appeal. We again caution members of the bar, however, to carefully comply with the requirements of the Wyoming Rules of Appellate Procedure.

other driver "Jeff" and suggested that he should drive more carefully. Muggelberg testified that he referred to the other driver as Jeff "[b]ecause I knew that he was a King, but I didn't—I wasn't sure if it was Ike or Jeff." Muggelberg and Baldes testified that the other driver responded by stating that his name was Ike, not Jeff, and that, if Muggelberg had a problem or something to say, he should pull over.

Muggelberg pulled over to the side of the street, climbed out of his car, and started walking toward the Oldsmobile. As Muggelberg approached the Oldsmobile, the driver came out of the car and struck Muggelberg behind the right ear with a club, which Muggelberg described as being two to three feet long, tapered, and wrapped in black tape. Muggelberg stumbled back toward his car, and the assailant brandished the club in the air, threatening and shaking it at Baldes who had come out of Muggelberg's car to assist Muggelberg.

Muggelberg and Baldes drove away, located Officer Abraham's police patrol car, and reported the incident to Officer Abraham at about 11:40 p.m. Muggelberg and Baldes informed Officer Abraham that the assailant was either Jeff King or Ike King. Muggelberg was acquainted with appellant's son and, therefore, was somewhat familiar with the King family. Muggelberg was subsequently transported by ambulance to Riverton Memorial Hospital where he received eight stitches in his head. Officer Abraham ran a check on the license number of the Oldsmobile, as reported to him by Baldes, and discovered that the car was registered to appellant's sister, Patricia Koryn. The following day, Muggelberg saw appellant, recognized him as his assailant, and reported this information to Officer Abraham.

A criminal complaint charging appellant with aggravated assault and battery was filed on February 1, 1988. After a preliminary hearing, appellant was bound over to the district court, and an information containing the same charge was filed on March 2, 1988. After various pretrial proceedings, appellant's trial began on July 18, 1988.

Appellant's defense, as presented at trial, consisted in part of the alibi that he had been with Linda Kennah at her home at the time of the assault. Appellant also attempted to discredit the identification of himself as the assailant, asserting, at least obliquely, that his brother, Jeff, was the actual perpetrator of the assault. Kennah's testimony at trial supported appellant's alibi defense. She stated that appellant came to her house on January 29, 1988, around suppertime, that sometime before 10:00 p.m. he left to buy some snacks, and that he returned shortly after 10:30 p.m., staying until after midnight.

The preliminary hearing testimony of appellant's sister, Patricia Koryn, was admitted at trial. Koryn initially testified at the preliminary hearing that she had not allowed appellant or anyone else to drive her Oldsmobile on the evening of January 29, 1988. Upon cross-examination by the State, however, she admitted that she had in fact given the car keys to appellant on the night in question. Appellant's testimony regarding the Oldsmobile was that Jeff King wanted to use the car that evening and that appellant borrowed the car for Jeff because Koryn would never allow Jeff to drive the car. Appellant testified that, after going to his sister's house and borrowing the Oldsmobile, he immediately gave possession of the car to Jeff, and he (appellant) returned to Kennah's home. Appellant called Jeff as a witness. After answering some preliminary questions as to his name, residence, et cetera, Jeff invoked the fifth amendment[2] privilege against self-incrimination and refused to answer questions material to his brother's trial.

At the conclusion of the trial, the jury returned a verdict finding appellant guilty of aggravated assault and battery. Post-trial motions for a new trial and for a judgment of acquittal after jury verdict

---

**2.** U.S. Const. amend. V provides in relevant part:

[N]or shall [a person] be compelled in any criminal case to be a witness against himself * * *.

were denied after a hearing. On September 21, 1988, appellant was sentenced to a term of not less than one and one-half years and not more than six years at the Wyoming State Penitentiary. Additionally, appellant was ordered to pay $50 to the crime victims compensation fund, to make restitution to the victim in the amount of $198.88, to repay the State $2,750 for the services of the public defender, and to repay Fremont County $1,081.51 for the costs of prosecution. This appeal was perfected. Additional relevant facts will be discussed as they relate to the specific issues presented.

## Motion for New Trial

■ On August 1, 1988, counsel for appellant filed a W.R.Cr.P. 34 motion for a new trial premised upon several grounds, including newly discovered evidence. The motion was denied after a hearing, and the denial of that motion with respect to newly discovered evidence is urged as error upon appeal.

The alleged newly discovered evidence consisted of a post-trial statement made by Jeff King to appellant's trial counsel that he (Jeff), and not appellant, had committed the assault. In an affidavit submitted with the motion, and in testimony at the motion hearing, appellant's trial counsel related that, after the verdict had been returned, he was standing outside the courthouse when Jeff drove up. Counsel testified that he walked over to Jeff's car and informed him of the verdict. According to the affidavit, the two discussed sentencing and appeal possibilities for appellant, and then this exchange occurred:

8. I then said to Jeff King, "Did you do it?". Jeff King's response was, "Yeah, Ike's not guilty.". I then said to Jeff King, "Why don't you just tell the truth?". Jeff King said, "Then [the prosecuting attorney] will just want to put me in prison.". I then said, "Yes, but you did do it.". Jeff King said, "Yes I did it. I know Muggelberg and I did it." I then said to Jeff King, "Why don't you just tell the truth?". He said, "I've done all I can do.". I then said to Jeff, "No, you haven't. You haven't told the truth.". He then asked when he could see Ike and I said probably tomorrow and then Jeff King drove off.

The decision of whether to grant or deny a new trial on the basis of newly discovered evidence is one within the sound discretion of the district court, and we will not reverse absent a showing of an abuse of that discretion. *Gist v. State*, 737 P.2d 336 (Wyo.1987), *appeal after remand* 766 P.2d 1149 (Wyo.1988); *Grable v. State*, 664 P.2d 531 (Wyo.1983). This Court has defined judicial discretion as "a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986), *quoted in Best v. State*, 769 P.2d 385, 387 (Wyo.1989). We have said that an abuse of discretion occurs when a court acts in a manner which exceeds the bounds of reason under the circumstances. *Keser v. State*, 737 P.2d 756 (Wyo.1987); *Martinez v. State*, 611 P.2d 831 (Wyo.1980). In determining whether there has been an abuse of discretion in denying a motion for a new trial, we will look to the facts and circumstances of each individual case. *Siegert v. State*, 634 P.2d 323 (Wyo.1981). As we have noted in previous cases, the question is not whether the district court would have been justified in granting a new trial but, rather, whether it was error to not grant a new trial. *Id.; Opie v. State*, 422 P.2d 84, 85 (Wyo.1967).

In *Opie* we adopted the criteria applied by the federal courts for granting a new trial on the basis of newly discovered evidence. We established in *Opie*, 422 P.2d at 85, that

it is incumbent on a party who asks for a new trial on the grounds of newly discovered evidence to satisfy the court: (1) That the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that it did not come sooner; (3) that it is so material that it would probably produce a different verdict, if the new trial were granted; and (4) that it is not cumulative,

viz., speaking to facts in relation to which there was evidence at the trial. We have consistently applied the "*Opie* test" in subsequent cases. *See, e.g., Best,* 769 P.2d at 387–88; *Gist,* 737 P.2d at 339–40; and *Grable,* 664 P.2d at 533. All the factors must be present in order for this Court to find that the trial court abused its discretion in denying a motion for a new trial on the basis of newly discovered evidence. If any one of the factors is not satisfied, then there has been no error of law committed by the *district court under* the circumstances, and no abuse of discretion can be found. *Gist,* 737 P.2d 336; *Grable,* 664 P.2d 531.

In the instant case, the district court did not give its reasons for denying appellant's motion for a new trial.[3] We, therefore, must examine the facts in relation to each factor to determine if the district court erred in denying appellant's motion.

This case is similar to *Gist,* 737 P.2d 336, with respect to the question of whether the evidence came to appellant's knowledge since the trial. In that case, Steve Gist had been convicted of delivery of, or possession with intent to deliver, marijuana. Although Gist did not put on any evidence at trial, it was his theory of the case, as developed through cross-examination and argument, that the undercover narcotics officer involved in the transaction was mistaken as to the identity of the person who actually delivered the marijuana; i.e., that the delivery had actually been made by Steve's brother, Roger. Roger Gist had also been charged with respect to this transaction but had been a fugitive until two days before Steve's trial. One day before Steve's trial, Roger appeared for an arraignment and pleaded not guilty to several charges, including a count involving the transaction for which Steve was about to be tried. Due to a perceived conflict of interest, Steve's counsel did not interview Roger prior to Steve's trial, nor did he attempt to produce Roger as a witness at Steve's trial.

After Steve's trial, Roger negotiated a plea bargain which resulted in the dismissal of the charges against him arising out of the transaction for which Steve had been convicted. Roger then confessed that he, not Steve, made the delivery in question. Thereafter, Steve moved for a new trial on the basis of newly discovered evidence. The district court denied the motion for a new trial on the ground that Steve or his attorney knew of the role of Roger in the transaction and, therefore, under the circumstances, the testimony could not be newly discovered. Although this Court reversed Steve's conviction on the basis of ineffective assistance of counsel, as emanating from the failure of counsel to investigate the nature and availability of Roger's testimony, we affirmed, in a divided decision, the trial court's denial of a new trial on the basis of newly discovered evidence. With respect to the asserted newly discovered evidence, this Court concluded that at least the potential for such testimony was known before trial, and, therefore, the testimony was not newly discovered.

The situation in the instant case, although similar, is distinguishable from *Gist.* Here, as in *Gist,* appellant's theory of the case was that his brother committed the crime, and at least the potential for Jeff's testimony was known to appellant and his counsel prior to trial. In this case, however, counsel acted upon this potential testimony and discovered that it would not materialize; i.e., that the desired evidence was unavailable and would not be forthcoming despite efforts to produce it. Counsel for appellant unsuccessfully attempted to contact Jeff before trial and did cause a subpoena to issue which produced Jeff as a witness at trial. Prior to the commencement of the trial, counsel for appellant inquired of Jeff what his testimony would be, and Jeff indicated that he would not answer any questions. Nevertheless, appellant's counsel did call Jeff to the stand, only to have Jeff exercise his privilege against self-incrimination by refusing to answer any relevant questions.

**3.** In *Best,* 769 P.2d at 389, we noted that W.R. Cr.P. 34 does not require the district court to specifically state its reasons for denying the motion. As we further observed in that case, however, appellate review is facilitated by a statement of the grounds for denial.

In *Salaz v. State*, 561 P.2d 238, 242 (Wyo.1977), we said:

Critical to the concept of newly discovered evidence is that the defendant had no knowledge of the new and material facts either prior to or during his trial. If the accused knew of the evidence prior to trial, it was his duty to produce that testimony at the trial or at least show that after due diligence the witness could not be found. Evidence is not newly discovered when it was known to the defendant or could have been known in the exercise of due diligence, and such evidence is not sufficient to grant a new trial.

In *Salaz*, we affirmed the denial of a motion for a new trial sought on the basis of a witness located after the defendant's trial where the defendant, knowing of the facts to which the witness would testify, did not exercise diligence in attempting to locate and produce the witness. In the instant case, appellant and his counsel did know of the existence of the witness, but they initially had no knowledge of the facts to which Jeff would testify. *Cf. Salaz*, 561 P.2d 238. They subsequently discovered, however, that Jeff would not testify to anything material to this case. Consequently, in pursuing their duty to produce the evidence, appellant and his counsel discovered that, in fact, the desired evidence did not exist prior to or during trial. Thus, since the fact and evidence of Jeff's confession came to appellant's knowledge after the trial, we conclude that appellant satisfied the first *Opie* factor, and the denial of his motion for a new trial cannot be sustained on that basis.

We are similarly satisfied that it was not owing to a want of due diligence that the evidence did not come to appellant's knowledge sooner. Counsel for appellant attempted to locate Jeff before trial and, failing in that regard, succeeded in producing him at trial by issuance of a subpoena. Although counsel discovered shortly before trial that Jeff would invoke his fifth amendment privilege, he nevertheless called Jeff as a witness in an attempt to elicit testimony regarding Jeff's participation in and/or knowledge of the offense. No lack of due diligence existed.

Although we determine that appellant has satisfied the first two *Opie* factors, we are of the opinion that this evidence is not so material that it would produce a different result and also that it is, to some extent, merely cumulative. As to these factors, we first observe that there is no indication that Jeff would testify if a new trial were granted; in fact, the record strongly suggests the contrary; i.e., that Jeff would not testify. Somewhat analogous circumstances were presented in the case of *United States v. Oliver*, 683 F.2d 224 (7th Cir.1982). In that case, a third party wrote a letter to the defendant's counsel confessing to the crime for which the defendant had been convicted. The Seventh Circuit Court of Appeals denied a motion for a new trial on the basis of a lack of due diligence. The court additionally noted, however, that, although it did not need to consider it, the question of whether the letter would probably produce an acquittal was much more difficult. The court described the "aura of suspicion" and problems of trustworthiness surrounding the letter and observed that there was no assurance that the author would come forth and subject himself to a thorough examination and cross-examination. *Id.* at 228–29. *See also Hopkinson v. State*, 679 P.2d 1008 (Wyo.), *cert. denied* 469 U.S. 873, 105 S.Ct. 228, 83 L.Ed.2d 157 (1984) (unsigned affidavit of witness of no value—no assurance that she would testify). These problems are obviously also present in the instant case.

Further, if we discount the possibility that Jeff would testify and focus exclusively on the statement he made to appellant's counsel, we must recognize there are serious questions as to the admissibility of that statement. *See Grable*, 664 P.2d at 535–36 (whether such evidence could even be admitted is problematical). The affidavit of appellant's counsel recounting Jeff's confession is clearly hearsay as would be counsel's in court testimony on this topic. Appellant argues, however, that the evidence is admissible as a statement against penal

interest pursuant to W.R.E. 804(b)(3). That rule provides in relevant part:

> (b) *Hearsay exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: [4]
>
> \*   \*   \*   \*   \*   \*
>
> (3) Statement Against Interest.—A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, \* \* \* that a reasonable man in his position would not have made the statement unless he believed it to be true. *A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement* [.]

(Emphasis added.)

Under the rule, the statement of Jeff King is arguably admissible if corroborating circumstances are present.[5] In 4 D. Louisell & C. Mueller, *Federal Evidence* § 489 at 1153 (1980), the authors note that courts have been "highly skeptical" of third-party confessions offered in support of motions for new trials. Thus, as the authors in the above-cited treatise point out, the rule allows the prosecutor to exclude such statements unless their trustworthiness is clearly indicated by corroborating circumstances. *Id.* at 1149. *See also* E. Cleary, *McCormick on Evidence* § 278 at 824 (3d ed.1984) (corroborating circumstances requirement reflects traditional distrust of statements against penal interest). In excluding statements against penal interest, courts have emphasized, among other things, the fact that particular statements were made under suspicious circumstances. 4 D. Louisell & C. Mueller, *supra* at 1161. The motive of the declarant to falsify for the benefit of the accused

should also be considered. *Id.* at 1160. *See also* 3 C. Wright, *Federal Practice and Procedure: Criminal 2d* § 557 at 334 (1982) (courts properly suspicious and will deny motion for new trial on the basis of third-party confession if not satisfied with the truth of the confession).

In the instant case, while there are some corroborating circumstances with respect to Jeff King's confession, in particular Muggelberg's initial confusion as to the identity of his assailant, an "aura of suspicion" and questions of trustworthiness surround the confession. The district court could reasonably have suspected a contrivance in Jeff's invocation of the fifth amendment at trial followed immediately and conveniently by a furtive confession after appellant's conviction. In any event, the admissibility of this evidence is at least questionable, and the decision to exclude or admit this evidence, as with other evidentiary rulings, would fall within the exercise of the district court's discretion.

If the evidence was not admitted, it obviously would not change the verdict. *See United States v. Stromberg*, 179 F.Supp. 278 (S.D.N.Y.1959) (inadmissable new evidence could not possibly produce a different result). If the affidavit and testimony of counsel were admitted, however, we are not convinced that it would probably produce a different verdict. Appellant's theory that Jeff committed the crime was developed for the jury at trial. In addition, counsel for appellant successfully argued against the State's proposed instruction to the effect that the jury was not to consider Jeff's exercise of the fifth amendment as an indication of his guilt. Thus, the jury was allowed to draw whatever inference it might from Jeff's refusal to testify, including an inference of his guilt. We do not believe that testimony regarding Jeff's convenient confession would be likely to materially alter the jury's perception of this case and result in a different verdict. In

---

4. The unavailability requirement is satisfied where the witness has invoked his fifth amendment privilege not to testify. W.R.E. 804(a)(1). E. Cleary, *McCormick on Evidence* § 253 at 754 (3d ed. 1984).

5. The corroborating circumstances requirement refers to the hearsay statement itself and not to the testimony of the witness testifying to the statement at trial, because his credibility can be tested in the usual manner. E. Cleary, *supra,* § 278 at 824 n. 10, and cases cited therein.

this regard, the evidence was also cumulative. Since this evidence fails to satisfy all the factors of the *"Opie* test," the trial court did not abuse its discretion in denying appellant's motion for a new trial on the basis of newly discovered evidence.

In an argument similar to that presented to this Court in *Gist,* 737 P.2d 336, appellant additionally urges this Court to adopt a less stringent standard than the *"Opie* test" for motions for new trials on the basis of newly discovered evidence which are made within ten days of the final decision. This "interest of justice" standard proposed by appellant has been applied by various federal courts to motions filed within the required time frame pursuant to F.R.Cr.P. 33, the federal counterpart to W.R.Cr.P. 34. *Gist,* 737 P.2d at 340; C. Wright, *supra* at 316 and cases cited therein. As in *Gist,* however, we are of the opinion that application of a less stringent standard would not change the result in this case. The admissibility of the evidence supporting the motion was questionable, and, even if admitted, the evidence would be unlikely to change the verdict. Thus, we do not need to determine whether we would apply the "interest of justice" test in an appropriate case.

## Prosecutorial Misconduct/Cross–Examination

█ Appellant's second issue concerns the conduct of the prosecuting attorney with respect to an exchange which occurred during cross-examination of appellant at trial. After impeaching several statements appellant had made on direct examination concerning events occurring on the night of the crime, the prosecutor asked appellant: "Mr. King, you're the only person who has any real interest in the outcome of this case, aren't you?" The court sustained an objection to this question as calling for speculation, but not before appellant answered in the affirmative. The prosecutor then propounded this question:

Given the totality of the circumstances in this case, Mr. King, you're not going to be too surprised when you are convicted, are you not?

Appellant's counsel immediately objected, and the prosecutor withdrew the question.

Appellant's contention regarding this question is twofold. First, appellant asserts that the question constituted prosecutorial misconduct intentionally designed to deny him a fair trial in that the prosecutor was in effect testifying as to his opinion regarding appellant's guilt. Second, although no motion for a mistrial was made, appellant contends that the district court committed plain error by not immediately declaring a mistrial upon its own motion. Although we agree that the question was improper, we do not perceive that it constituted misconduct so grave as to deprive appellant of a fair trial or to require the district court to *sua sponte* order a mistrial.

We review a claim of prosecutorial misconduct by examining the entire record to determine whether the conduct of the prosecutor resulted in substantial prejudice amounting to the denial of a fair trial. *Burke v. State,* 746 P.2d 852 (Wyo.1987); *Lindsey v. State,* 725 P.2d 649 (Wyo.1986). Our review of the record includes an evaluation of the state of the evidence and the probability of prejudicial impact on the defendant under the circumstances of the particular case. *Burke,* 746 P.2d 852; *Stogner v. State,* 674 P.2d 1298 (Wyo. 1984).

The question, which implied that appellant was guilty in the eyes of the prosecutor, was improper. Appellant calls our attention to various standards for prosecutors enunciated in I ABA, *Standards for Criminal Justice* ch. 3 at 3–69 (2d ed. 1979 & 1986 Supp.).[6] We agree with appellant that some of these standards are pertinent to our consideration of the prosecutor's conduct in this case. Standard 3–5.6(b) describes as unprofessional conduct by a prosecutor the asking of questions known

---

6. The *Standards for Criminal Justice* (ABA) have been previously cited with approval by this Court. *See Browder v. State,* 639 P.2d 889, 893 (Wyo.1982); and *Roby v. State,* 587 P.2d 641, 644 (Wyo.1978).

to be legally objectionable and the making of impermissible comments in the presence of the judge or jury. Standard 3–5.8(b) states that it is unprofessional conduct for the prosecutor to express a personal belief or opinion as to the guilt of the defendant. *See also Browder v. State*, 639 P.2d 889, 893 (Wyo.1982) (prosecutor prohibited from injecting personal beliefs relating to matters in issue). The prosecutor, by making this thinly veiled statement of his belief in appellant's guilt, overstepped the bounds of proper prosecutorial conduct. As this Court has noted: "While [the prosecutor] may strike hard blows, he is not free to strike foul ones." *Lindsey*, 725 P.2d at 656, and *Hopkinson v. State*, 632 P.2d 79, 166 (Wyo.1981), *cert. denied* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). *See also Singer v. United States*, 380 U.S. 24, 85 S.Ct. 783, 791, 13 L.Ed.2d 630 (1965).

In reviewing the entire record, however, we are not convinced the conduct of the prosecutor in asking this one improper question substantially prejudiced appellant. The evidence of appellant's guilt was considerable. In particular, the testimony of the victim, Muggelberg, his girl friend, Baldes, and appellant's sister, Koryn, established a strong case for the State. In addition, the credibility of appellant and his theory of the case had been severely damaged by earlier cross-examination which revealed numerous inconsistencies in appellant's versions of the events on the night of the crime. We also note that the jury returned a verdict against appellant after deliberating only two and one-half hours. This was not a particularly close case. *Cf. Browder*, 639 P.2d at 895 (reversal of defendant's conviction on basis of plain error where the case was close and the improper comments of the prosecutor were numerous and extreme). As we have observed on other occasions, the Constitution guarantees only a fair trial, not a perfect one. *Lindsey*, 725 P.2d at 657; *Jasch v. State*, 563 P.2d 1327, 1330 n. 2 (Wyo.1977). We conclude that the prosecutor's conduct in cross-examination, while improper, did not deny appellant a fair trial. It follows, accordingly, that the district court did not

commit plain error by failing to declare a mistrial upon its own initiative.

## Prosecutorial Misconduct/Closing Argument

In closing argument, the prosecutor commented on appellant's failure to call two witnesses who might have been able to corroborate appellant's version of the events in question. Appellant contends that such comments were misconduct which denied him due process and a fair trial. We do not agree.

As the State correctly points out, the comments of the prosecutor must be put into perspective. Appellant defended this case on the theory that his brother, Jeff, who assertedly resembles appellant in appearance, committed the assault for which appellant had been charged. Appellant testified that he had not been driving his sister's Oldsmobile on January 29, 1988, and that he gave the car keys to Jeff. Appellant further testified that his son and Koryn's son observed him give the car keys to Jeff and that the boys asked why he had done so. Appellant did not call either of the boys at trial.

It was within this context of the trial that the prosecutor, near the end of his closing argument, said to the jury:

If the defendant had been telling you the truth, why wasn't Chad King called? He could have backed up a portion of the testimony. Why wasn't Chester, the daughter of Patricia—excuse me, the son of Patricia Koryn called? He could have backed up some of the testimony.

Although no objection was taken to these comments at trial, appellant argues that they constitute plain error, warranting reversal. Our standard for evaluating a claim of plain error was recently reiterated in *Lauthern v. State*, 769 P.2d 350, 357 (Wyo.1989):

When an issue was not raised at trial, the appellant must establish that the alleged error was plain error. Failure to object at trial constitutes a waiver of the alleged error unless the error rises to the level of plain error. Appellant bears the burden of establishing plain error, and

the rule is applied sparingly and only in special circumstances. This Court applies a three-part test to determine if plain error has occurred. First, the record must clearly show the incidents alleged as plain error. Second, the appellant must demonstrate the violation of a clear and unequivocal rule of law. Finally, it must be shown that the appellant was materially prejudiced—that a substantial right of the appellant was adversely affected.

(Citations omitted.)

A contention similar to appellant's was raised in *Seyle v. State*, 584 P.2d 1081 (Wyo.1978), and we believe our holding in that case is dispositive of this issue. In *Seyle*, the defendant was convicted of manslaughter of his two-year-old stepson. The child's mother was not called to testify at trial by either the State or the defendant. In his closing argument, the prosecutor commented, without objection, on the mother's failure to testify. We noted in *Seyle* that the marital privilege would not have prevented the wife's testimony in a child abuse/child homicide case. *Id.* at 1086. Thus, it was not a case in which the prosecutor improperly commented on the exercise of a privilege not to testify. We also noted that the wife, having the same status as any other witness, was equally available to the defense and the prosecution. *Id.*

In rejecting a claim of plain error in *Seyle*, we first observed that, generally, where a witness is equally available to both parties, the failure to call the witness is not the proper subject of comment. *Id.* We acknowledged an exception to that principle, however, which arises where the failure to call such a witness leads more naturally to an inference against the defendant. *Id.* We held that, "where the wife of a defendant in a criminal case, like that now before us, might be a material witness, and she is not placed on the stand by the defendant, it is permissible for the State in argument to infer that the absent testimony would have been both material and damaging." *Id.* This principle has been approved in other jurisdictions. *See, e.g., State v. Ennis*, 99 N.M. 117, 654 P.2d 570 (Ct.App.), *cert. denied* 99 N.M. 148, 655 P.2d 160 (1982) (prosecutor may comment on the failure to call a witness as long as the comment cannot be construed as a comment on the failure of the defendant to testify); *Assadollah v. State*, 632 P.2d 1215 (Okla.Cr.1981) (rule in Oklahoma is that, where a person who might be a material witness on behalf of the defendant is not called by the accused nor his absence accounted for, failure to produce him as a witness is a legitimate matter for comment in the State's argument); and *State v. Wilkins*, 215 Kan. 145, 523 P.2d 728 (1974) (when defense theory is premised on facts within the personal knowledge of a person available as a witness and no attempt is made to secure the testimony of such person is made, the failure to produce the testimony may give rise to an inference that it would be adverse to the party who could have produced it—and comment by the prosecutor on such an inference is permissible).

The comments by the prosecutor in the instant case fall squarely within the principle established by the *Seyle* case, and we hold that such comments did not constitute error. Thus, appellant did not establish the violation of a clear and unequivocal rule of law, and his contention of plain error must fall.

### Preliminary Hearing Testimony

Appellant called his sister, Patricia Koryn, as a witness at his preliminary hearing. On direct examination, she testified that she owned a gold colored 1986 Oldsmobile which she drove to work on January 29, 1988. Koryn testified that, on the evening of January 29, 1988, she did not give anyone permission to drive the Oldsmobile, that to her knowledge no one (other than she) drove the car that evening, and that to her knowledge neither Ike King nor Jeff King possessed a set of keys to her car at that time. On cross-examination, Koryn initially held to her testimony that she had not loaned her car to appellant on the night in question. The prosecutor persevered, however, eventually obtaining this admission:

[Q.] Would you answer my question.
[A.] What, what was the question?

[Q.] You gave your keys to your brother [Ike] that night, I, your car keys.

[A.] Yes sir, I did. I'm sorry.

At appellant's trial, it was determined that Koryn was unavailable as a witness, and the district court, over the strenuous objection of appellant's trial counsel, permitted Koryn's preliminary hearing testimony to be read to the jury and into the record. Appellant argues, as he did below, that the admission of this testimony violated established rules of evidence and his constitutional right to confront witnesses against him. We disagree.

In reviewing the admissibility of this testimony, we must analyze the hearsay rule concerning former testimony within the framework of the confrontation clauses of the United States Constitution[7] and the Wyoming Constitution.[8] *See Rodriguez v. State,* 711 P.2d 410 (Wyo.1985). Former testimony, as an exception to the hearsay rule, is addressed by W.R.E. 804(b)(1), which reads:

> (b) *Hearsay exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (1) Former Testimony.—Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination[.]

The rule establishes three requirements for admissibility of former testimony: (1) unavailability of the witness; (2) the testimony must have been given by the witness while he was testifying at a hearing or deposition (i.e., under oath); and (3) the party against whom the testimony is offered must have

had the opportunity and a similar motive to develop the testimony. *Rodriguez,* 711 P.2d at 413; *Grable v. State,* 649 P.2d 663, 671 (Wyo.1982); 4 D. Louisell & C. Mueller, *supra* at § 487. Appellant does not contest the second requirement but, rather, focuses his argument on the questions of unavailability and opportunity and motive to develop.

Various definitions of unavailability of a witness are provided by W.R.E. 804(a). The definition with which we are here concerned is found in W.R.E. 804(a)(5), which states that a witness is unavailable if he "[i]s absent from the hearing and the proponent of his statement has been unable to procure his attendance by process or other reasonable means." The unavailability requirement reflects a preference for live testimony and face-to-face confrontation. *See Ohio v. Roberts,* 448 U.S. 56, 63–65, 100 S.Ct. 2531, 2537–38, 65 L.Ed.2d 597 (1980) (confrontation clause conforms to framers' preference for face-to-face accusation); and 4 D. Louisell & C. Mueller, *supra* at § 486 (requirement expresses rule of preference for live testimony). The prosecution bears the burden of proving unavailability of a witness despite good faith efforts to obtain his presence at trial. *Grable,* 649 P.2d at 672; *Roberts,* 448 U.S. at 65, 100 S.Ct. at 2538. The determination of unavailability, however, is a matter vested in the sound discretion of the trial court, and that determination will not be overturned absent a showing of an abuse of discretion. *Grable,* 649 P.2d at 672; *Martinez,* 611 P.2d at 837.

In the instant case, prior to admission of the preliminary hearing testimony, the district court heard testimony in chambers regarding the efforts by the State to locate Koryn, who had left Riverton, Wyoming, and apparently had moved out of the state. Kevin Lee, a Riverton police investigator, and Vernon Hennesay, Jr., a deputy sheriff with the Fremont County sheriff's office,

---

7. U.S. Const. amend. VI provides in part:

   In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *.

8. Wyo. Const. art. 1, § 10, in nearly identical language, provides:

   In all criminal prosecutions the accused shall have the right * * * to be confronted with the witnesses against him * * *.

testified as to their attempts, working separately, to locate and serve a subpoena on Koryn. The officers recounted obtaining various vague leads as to Koryn's location from a number of sources, including her last employer, the post office, and her mother. The information they initially received indicated that Koryn might be in Utah, but later information indicated that Koryn and her husband were in Nevada working at a mine. Deputy Sheriff Hennesay described his contacts with law enforcement authorities in Elko, Nevada, and with several mining concerns in the Elko area, all of which were fruitless. Officer Hennesay also testified that his office ran license plate and driver's license checks in both Wyoming and Nevada. Of particular significance, we think, is Officer Lee's testimony regarding his contacts with Koryn's mother. According to the officer, the mother indicated that she did not know where her daughter was and that, the last she had heard, Koryn was in Utah.

After hearing the above testimony and the arguments of counsel, the district court determined that the State's efforts to procure the attendance of Koryn had been reasonable and that the State had met its burden of proving unavailability. We do not perceive that the district court abused its discretion in making this determination. Appellant emphasizes in his argument, however, that the State did not attempt to locate or subpoena Koryn until July 12, 1988, six days before trial. In response to this same argument, the district court noted that, as late as July 6, 1988, the court had been informed that appellant was going to enter a change of plea to guilty and that, in fact, all the parties had appeared in court on that date for a change of plea.

We agree with the district court that, under those circumstances, the State should be excused from trying to locate the witness at least prior to July 6, 1988. Although a good faith effort to obtain the presence of the witness must be demonstrated, futile acts are not required. *Roberts*, 448 U.S. at 74, 100 S.Ct. at 2543; [9] *Grable*, 649 P.2d at 672. The length to which the prosecution must go to obtain the presence of the witness is a question of reasonableness. *Id.* Here, the efforts by the prosecution to locate and produce Koryn for trial were reasonable, and we cannot say that the district court abused its discretion in concluding that Koryn was unavailable.

■ Having determined the unavailability requirement was satisfied, we turn our attention to the question of appellant's opportunity and motive to develop the testimony at the preliminary hearing. We first observe that appellant unquestionably had the opportunity to develop the testimony at the preliminary hearing. Appellant's trial counsel called Koryn at the preliminary hearing and questioned her at length regarding her knowledge of the events of January 29, 1988. The prosecutor then cross-examined Koryn, eliciting the damaging admission that she had indeed loaned her car to appellant on that night. Following the State's cross-examination, counsel for appellant did not pursue the opportunity for further examination of the witness.

With respect to motive to develop, we noted in *Rodriguez*, 711 P.2d 410, that a minority of jurisdictions have adopted a per se rule against admission of preliminary hearing testimony. The rationale offered for this per se rule is that defense counsel's

---

**9.** The facts regarding unavailability in *Roberts*, 448 U.S. 56, 100 S.Ct. 2531, are similar to those in the instant case. The defendant in *Roberts* called a witness at the preliminary hearing whose testimony supported the prosecution. Before trial, five subpoenas were issued for the witness at her parents' home, although she was never at that residence when these were executed. The defendant's trial was held fourteen months after the preliminary hearing. At trial, the prosecution sought admission, over defense objection, of the preliminary hearing testimony. A voir dire hearing on admissibility was held.

The missing witness' mother testified that her daughter had left the parents' home in Ohio soon after the preliminary hearing. The mother stated that seven or eight months before trial the daughter called her parents to say she was traveling outside of Ohio and that the daughter would not reveal the place from where she was calling. The mother testified she knew of no way to contact her daughter. Upon these facts, the Supreme Court upheld the determination by the Ohio Supreme Court that the witness' unavailability in the constitutional sense had been established. *Id.* at 75, 100 S.Ct. at 2543.

motive to cross-examine at a preliminary hearing is assertedly never similar to his motive at trial because of the limited scope of a preliminary hearing in establishing probable cause. *Id.* at 413 (citing *People v. Smith,* 198 Colo. 120, 597 P.2d 204 (1979)). As have the majority, we rejected that position. *Rodriguez,* 711 P.2d at 414. *See* 4 D. Louisell & C. Mueller, *supra,* § 487 at 1092–93; E. Cleary, *supra,* § 255 at 762. We similarly refused to join those jurisdictions which have adopted a per se rule of admissibility of preliminary hearing testimony if the declarant is unavailable. *Rodriguez,* 711 P.2d at 414 (citing *State v. Brooks,* 638 P.2d 537 (Utah 1981), and *State v. Martinez,* 102 N.M. 94, 691 P.2d 887 (Ct.App.1984)). We decided in *Rodriguez* that this Court would apply a case-by-case analysis to the similar motive requirement in relation to preliminary hearing testimony. *Rodriguez,* 711 P.2d at 414.

Most of the cases analyzing the motive of the defendant to develop the former testimony of a witness have focused on the motive to cross-examine. *See, e.g.,* our analysis in *Grable,* 649 P.2d 663, and *Martinez,* 611 P.2d 831. W.R.E. 804(b)(1), however, refers to the motive to develop "by direct, cross, or redirect examination." In 4 D. Louisell & C. Mueller, *supra,* § 487 at 1086, the authors note, with respect to the motive to develop on direct and redirect as referred to by the rule, that:

> The idea is that a party who calls a witness and elicits his testimony ordinarily has no need of the tool of cross-examination, and has enough opportunity fairly to develop the knowledge of the witness on the important points without use of other questioning techniques.

In *Roberts,* 448 U.S. 56, 100 S.Ct. 2531, the preliminary hearing testimony at issue involved a witness called at the preliminary hearing by the defendant. Counsel for the defendant questioned the witness at length, unsuccessfully attempting to elicit an admission favorable to his client. The witness' testimony, however, supported the prosecution. Defense counsel did not ask to have the witness declared hostile and did not request permission to cross-examine. The prosecutor did not question the witness. *Id.* at 58, 100 S.Ct. at 2535. The Supreme Court held that the admission of this former testimony at trial did not violate the confrontation clause. *Id.* at 73, 100 S.Ct. at 2542. The Court noted that, in evaluating former testimony under the confrontation clause:

> "'The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement.'"

*Id.* at 65–66, 100 S.Ct. at 2538–39. (quoting *Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972) (citations omitted)). Although the Court left open the question of whether the mere opportunity to cross-examine the witness satisfied the confrontation clause, *Roberts,* 448 U.S. at 70, 100 S.Ct. at 2541, the Court found sufficient "indicia of reliability" in the direct examination of the witness in *Roberts.* Particularly, the Court observed that defense counsel explored the underlying events in detail with the witness, that counsel tested the sincerity and veracity of the witness, and that in many respects counsel's examination partook the form of cross-examination. *Id.* at 70–71, 100 S.Ct. at 2541–42.

The analysis in *Roberts* is applicable to the instant case. Here, Koryn was called by appellant at the preliminary hearing. On direct examination, appellant's trial counsel explored in depth the underlying events of January 29, 1988. Although counsel occasionally asked leading questions, the favorable nature of the testimony precluded the need for such questioning. On cross-examination by the prosecutor, however, Koryn broke down and admitted that she had in fact allowed appellant to use her car on the night in question, essentially admitting that she had lied on direct. Appellant's trial counsel, undoubtedly shocked by this turn of events, declined the opportunity to further examine the witness. Realistically, the damage had been

done, and there was little counsel could hope to accomplish by further examination. Under the circumstances, the requirement for a similar opportunity to develop the testimony was satisfied and, considering the entire tenor of the testimony, the trier of fact was afforded a satisfactory basis for evaluating the truth of the prior statement. We conclude that the district court did not err in admitting into evidence the preliminary hearing testimony of Patricia Koryn.

### Note–Taking

■ For his fifth issue, appellant contends that his right to a fair trial was compromised by the failure of the district court to control note-taking by the jury. The basis of this contention is found in two comments made by the district court to counsel in chambers to the effect that "we have a note-writing jury here" and "I'm going to have to do something about it." It appears from the record, however, that on each occasion the district court was referring to notes individual jurors had sent to the bench and not, as appellant suggests, to the jury taking notes during testimony. No mention or objection by appellant's trial counsel to note-taking by the jury is evident in the record. Even if note-taking had occurred, the failure to object at trial precludes our considering it for the first time on appeal absent plain error, which we do not perceive. *See United States v. Smith*, 393 F.2d 687 (6th Cir.), *cert. denied* 393 U.S. 885, 89 S.Ct. 197, 21 L.Ed.2d 162 (1968) (where issue of alleged note-taking was not presented to trial court, it cannot be raised for first time on appeal). Given the absence of record support for the incidents appellant alleges as error, we do not need to further consider the issue.

### Costs of Defense

■ As part of his judgment and sentence, appellant was ordered to "repay the State of Wyoming for the services of the Public Defender in the amount of Two Thousand Seven Hundred Fifty Dollars ($2,750.00)." Appellant challenges the propriety of this order, contending that the Wyoming statutes authorizing recoupment of defense costs, Wyo.Stat. §§ 7–6–106 and 7–6–108 (1977), unconstitutionally "chill" the exercise of the right to counsel. We do not need to reach appellant's constitutional claim, however, because we conclude that the district court erred in ordering this reimbursement without first determining appellant's ability to pay as required by § 7–6–106 and *Keller v. State*, 771 P.2d 379 (Wyo.1989) (construing Wyo.Stat. § 7–1–112 (1977), which was amended and renumbered § 7–6–106 in 1987).

Section 7–6–106(c) provides in pertinent part:

To the extent that a person receives the services set out in W.S. 7–6–104, and is *able to provide some funds toward the costs associated with such services*, the presiding court may order the person to reimburse the state for the cost of the services provided. In making such an order, *the court shall consider the financial resources of the person* and the expenses and services provided * * *.

(Emphasis added.)[10] The above language is similar to that which was found in § 7–1–112(c) prior to its amendment in 1987:

To the extent that a person covered by W.S. 7–9.20 [§ 7–1–110] is able to provide for an attorney, the other necessary services and facilities of representation, and court costs, the court may order him to provide for their payment.

In *Keller*, 771 P.2d 379, we held that, pursuant to § 7–1–112(c) (now § 7–6–106(c)), the district court could not order reimbursement without first determining the defendant's ability to pay. We now hold that the substantially similar language in § 7–6–106(c) mandates the same determination. The State contends that the district court did consider appellant's financial resources at sentencing. The in-

---

**10.** Section 7–6–108 empowers the attorney general to sue on behalf of the State to recover payment for defense services.

quiry to which the State refers, however, was made subsequent to the decision to order reimbursement for the services of the public defender and was made for the purpose of determining whether the court should certify appellant's indigency for purposes of providing counsel on appeal. After ascertaining that appellant had approximately $500 in ready cash, a pickup worth about $1,000, and a car worth $250 upon which he still owed $150, the district court certified his indigency. Since the district court failed to consider appellant's ability to pay in ordering reimbursement of defense expenses, we reverse that aspect of the judgment and sentence.

### Costs of Prosecution

As part of his judgment and sentence, appellant was additionally ordered to repay Fremont County $1,081.51 for certain costs of the prosecution. The figure represents various witness expenses, including travel expenses, per diem, and witness fees. Appellant presents a twofold challenge to the assessment of these costs. First, he challenges the constitutionality of the statutory scheme providing for recoupment of prosecution costs. Second, appellant argues that certain costs assessed were unreasonable. We cannot agree with either contention.

We have established that a court cannot tax costs in a criminal case without express statutory authority. *Loomer v. State*, 768 P.2d 1042 (Wyo.1989); *Burke*, 746 P.2d 852. Institutional costs involving court, jury, and bailiff expenses cannot be assessed, as the right to a jury trial in criminal prosecutions must be held inviolate. *Kaess v. State*, 748 P.2d 698 (Wyo.1987); *Johnson v. State*, 532 P.2d 598 (Wyo.1975); *Arnold v. State*, 76 Wyo. 445, 306 P.2d 368, 65 A.L.R.2d 839 (1957). In *Loomer* and *Burke*, we disallowed assessments of the costs of prosecution because, under the applicable statutes, assessment of such costs was not authorized in felony cases. In 1987, however, the legislature amended

Wyo.Stat. § 7–11–516 (1977) and renumbered it Wyo.Stat. § 7–11–505 (1977) to provide: "Payment of the costs of prosecution may be added to and made a part of the sentence in any felony or misdemeanor case." Thus, the legislature has expressly provided for the assessment of costs such as those taxed against appellant in the instant case.

■ In arguing the unconstitutionality of § 7–11–505, appellant refers us to cases involving the assessment of defense costs, which assessments, as previously noted, invoke considerations of the right to counsel and equal protection. By analogy, appellant asserts that statutes providing for the recoupment of prosecution costs operate to "chill" the right to plead not guilty. Appellant provides scant authority for this argument, however, and we note that statutes such as § 7–11–505, imposing liability for prosecution costs, have consistently been held constitutional as long as they are not construed to authorize assessment of institutional costs. *See, e.g., United States v. Palmer*, 809 F.2d 1504 (11th Cir.1987); *People v. Estate of Scott*, 66 Ill.2d 522, 6 Ill.Dec. 876, 363 N.E.2d 823 (1977); *State v. Harris*, 309 Minn. 395, 244 N.W.2d 733 (1976); Annotation, *Items of costs of prosecution for which defendant may be held*, 65 A.L.R.2d 854 at § 21 (1959) (annotating *Arnold*, 306 P.2d 368); and 20 C.J.S., *Costs* § 436 (1940). This Court has long acknowledged the constitutionality of assessing costs of prosecution in criminal cases where authorized by statute. *Jenkins v. State*, 22 Wyo. 34, 135 P. 749 (1913);[11] *cf. Arnold*, 306 P.2d 368 (disallowing costs associated with jurors and bailiffs). We reject, therefore, appellant's challenge to the constitutionality of § 7–11–505.

■ Aside from the constitutional argument, appellant challenges as unreasonable the inclusion as part of the costs of prosecution the expenses of prosecution witness Jack Vining. Officer Vining, an investiga-

**11.** In *Jenkins*, upon a conviction of first-degree murder, the defendant was sentenced "to suffer the penalty of death," fined $1,000, and assessed the costs of prosecution. This Court upheld the imposition of the statutorily authorized fine and assessment of prosecution costs. *Jenkins*, 135 P. at 751.

tor with the Riverton police department, investigated this case. At the time of appellant's trial, however, Officer Vining had moved to California. Of the $1,081.51 in prosecution costs assessed against appellant, $847.75 represented airline tickets, motel accommodations, meals, mileage, and witness fees for this witness.

Officer Vining testified at appellant's trial that he had taken statements from appellant and Muggelberg and that he had taken photographs of Muggelberg's injuries. Appellant argues that this testimony was unnecessary to the State's case and that he should not be burdened with the expense of obtaining needless testimony. The photographs were received into evidence, however, and appellant's statement to Officer Vining was used extensively by the State when cross-examining appellant. Nevertheless, the district court did express some reservations about ordering reimbursement for the transportation expenses of Officer Vining as claimed by the State in its affidavit of costs. The district court said, regarding these expenses: "[I]f there is some question about that, I'll be glad to reconsider it upon the proper presentation by the defense." Appellant did not respond to this offer and made no objection in the district court to these expenses. Having failed to contest these expenses in the district court even when invited to do so, appellant will not now be heard to complain that they are unreasonable. Under the circumstances, we cannot say the district court abused its discretion by including expenses associated with Officer Vining's testimony in the costs of prosecution assessed against appellant.

### Failure to Suppress

Prior to his trial, appellant filed a motion to suppress, seeking suppression of all evidence and testimony by Officer Abraham concerning his observation of a club in appellant's truck during the course of the traffic stop of appellant on the evening of January 29, 1988. After a hearing, the district court denied the motion, and Officer Abraham's testimony regarding the club was received at trial. On appeal, appellant asserts, as he did in the proceedings below, that such testimony was the product of an unconstitutional search and seizure and was, therefore, inadmissible.

The guarantee against unreasonable searches and seizures is found in both art. 1, § 4 of the Wyoming Constitution and the fourth amendment to the United States Constitution, as applicable to the states through the fourteenth amendment. As we observed in *Pellatz v. State*, 711 P.2d 1138, 1140 (Wyo.1986):

In all contended impermissible-search questions, the court must first consider the threshold question of whether a search, in the constitutional sense, occurred at all, before reaching the issue as to whether or not the search was unreasonable.

In the case at bar, the activities of Officer Abraham constituted neither a search nor a seizure. The question of reasonableness, therefore, does not arise, and, in the absence of a search or seizure, there can be no constitutional violation requiring suppression of the evidence.

The protection afforded by the fourth amendment has been defined as the protection of persons from unreasonable government intrusions into their legitimate expectations of privacy. *United States v. Chadwick*, 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977); *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *Pellatz*, 711 P.2d at 1141. The Supreme Court has recognized that people have a lesser expectation of privacy in automobiles. *New York v. Class*, 475 U.S. 106, 112, 106 S.Ct. 960, 965, 89 L.Ed.2d 81 (1986); *Chadwick*, 433 U.S. at 12, 97 S.Ct. at 2484. In *Class*, 475 U.S. at 112–13, 106 S.Ct. at 965, the Court said:

"One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. A car has little capacity for escaping public scrutiny. It travels public thoroughfares where both its occupants and its contents are in plain view." *Cardwell v. Lewis*, 417 U.S. 583, 590, 41 L.Ed.2d 325, 94 S.Ct. 2464 [2469],

69 Ohio Ops.2d 69 (1974) (plurality opinion).

The Supreme Court decision in *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983), is both instructive and dispositive with respect to the issue before us. In that case, a police officer made a routine stop of the defendant's car at night at a driver's license checkpoint. Standing next to the driver's window, the officer asked the defendant for his license and shined his flashlight into the car. The officer observed the defendant pulling an opaque green party balloon, which was knotted near the tip, from his pants pocket. The balloon fell from the defendant's hand onto the car seat as he reached to open the glove compartment. From his experience, the officer knew that narcotics were often packaged in such balloons. While the defendant was rummaging through his glove compartment looking for his license, the officer shifted his position to obtain a better view and observed small plastic vials, loose white powder, and a bag of party balloons in the glove compartment. The officer instructed the defendant to get out of the car, and the officer picked up the green balloon which appeared to contain a powdery substance. The defendant was placed under arrest, and the car was searched, resulting in the seizure of other items. The state trial court refused to suppress the seized evidence, and the defendant was convicted for possession of heroin. The Texas Court of Criminal Appeals, in reversing the conviction, held that the evidence should have been suppressed and rejected the State's argument that the "plain view" doctrine justified the seizure.

The Supreme Court granted certiorari and reversed the Texas Court of Criminal Appeals, holding that the "plain view" doctrine as enunciated in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), was applicable and that the evidence was lawfully seized. *Brown*, 460 U.S. 730, 103 S.Ct. 1535. In reaching this decision, the Court noted the three requirements established by *Coolidge* for the warrantless seizure of private possessions by a police officer: (1) the initial intrusion must be lawful or the officer must otherwise properly be in a position from which he can view a particular area; (2) the incriminating evidence must be discovered inadvertently; and (3) it must be immediately apparent that the items observed may be evidence of a crime, contraband, or otherwise subject to seizure. *Brown*, 460 U.S. at 737, 103 S.Ct. at 1540–41. The Court's comments regarding the first requirement are particularly germane to the instant case. The Court stated that " 'plain view' provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment." *Id.* at 738, 103 S.Ct. at 1541. Significantly, the Court noted:

> It is important to distinguish "plain view," as used in *Coolidge* to justify *seizure* of an object, from *an officer's mere observation of an item left in plain view.* Whereas the latter *generally involves no Fourth Amendment search,* the former generally does implicate the Amendment's limitations upon seizures of personal property.

*Id.* at 738 n. 4, 103 S.Ct. at 1541 n. 4 (emphasis added and citations omitted).

In determining that the officer in *Brown* was properly in a position to view the particular area, the Court said:

> It is likewise beyond dispute that [the officer's] action in shining his flashlight to illuminate the interior of [the defendant's] car trenched upon no right secured to the latter by the Fourth Amendment. The Court said in *United States v. Lee*, 274 U.S. 559, 563, 71 L.Ed. 1202, 47 S.Ct. 746 [748] (1927): "[The] use of a searchlight is comparable to the use of a marine glass or a field glass. It is not prohibited by the Constitution." Numerous other courts have agreed that the use of artificial means to illuminate a darkened area simply does not constitute a search, and thus triggers no Fourth Amendment protection.
>
> Likewise, the fact that [the officer] "changed [his] position" and "bent down at an angle so [he] could see what was inside" [the defendant's] car is irrelevant to Fourth Amendment analysis. The

general public could peer into the interior of [the defendant's] automobile from any number of angles; there is no reason [the officer] should be precluded from observing as an officer what would be entirely visible to him as a private citizen. There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers. *In short, the conduct that enabled [the officer] to observe the interior of [the defendant's] car and of his open glove compartment was not a search within the meaning of the Fourth Amendment.*

*Id.* at 739–40, 103 S.Ct. at 1541–42 (emphasis added; footnote and citations omitted). To similar effect, see *Pellatz*, 711 P.2d 1138 (examination of exterior of backhoe located in public parking lot to find vehicle identification number not a search in constitutional sense); *Daygee v. State*, 514 P.2d 1159 (Alaska 1973) (in speeding stop, officer shined his flashlight into interior of car and saw bag of marijuana, which he seized—not an illegal search and seizure—not a search to observe that which is in the plain view of an officer who is rightfully in a position to have that view); and 1 W. LaFave, *Search and Seizure* § 2.5(c) (2d ed. 1987) (if officer by use of his natural senses is able to discover what is inside a vehicle while standing in a place where he has a right to be—this discovery does not constitute a fourth amendment search).

Applying the reasoning from *Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502, to the instant case, it is apparent that the conduct of Officer Abraham did not constitute a search within the meaning of the fourth amendment. In the course of a routine traffic stop, Officer Abraham shined his flashlight into the interior of appellant's vehicle to ascertain whether or not others were present. Officer Abraham testified that he does this as a matter of standard procedure for personal safety, and we do not question that he was legitimately in a position to make the view into the interior of the pickup. The club which Officer Abraham observed was in plain view. There is no reason he could not testify as to what he observed. The district court did not err in denying appellant's motion to suppress this testimony.

■ Appellant also argues, as a collateral issue, that the district court erred in allowing the State to augment the record in connection with the motion to suppress. At a hearing upon the State's motion to augment, the district court allowed the State to present the testimony of a dispatcher for the Riverton police department. This testimony was offered to rebut appellant's testimony at the suppression hearing and to corroborate the testimony given by Officer Abraham at that hearing regarding facts surrounding the traffic stop. At the time of the hearing on the motion to augment, the district court had taken the motion to suppress under advisement. The district court allowed further testimony because of the conflicting nature of the testimony received at the suppression hearing and because, as the State argued, the testimony of appellant at the suppression hearing did not comport with that which was reasonably to be expected on the basis of the pretrial conference, thereby taking the State somewhat by surprise. Under the circumstances, we perceive no error in allowing the State to augment the record.

Instruction No. 8

■ As his final issue, appellant contends that the district court improperly gave a jury instruction offered by the State regarding intimidation of a witness. We disagree.

The trial court has a duty to instruct the jury on the general principles applicable to the case. *Phillips v. State*, 760 P.2d 388 (Wyo.1988); *Roose v. State*, 759 P.2d 478 (Wyo.1988). In *Scadden v. State*, 732 P.2d 1036, 1053 (Wyo.1987), we said:

The general rule in reviewing questions involving instructions is that the trial judge is afforded latitude to tailor the instructions to the facts of the case, and reversible error will not be found as long as the instructions when viewed as a whole and in the context of the entire

trial fairly and adequately cover the issues.

*Quoted in Miller v. State*, 755 P.2d 855, 864 (Wyo.1988).

Linda Kennah testified as an alibi witness for appellant. On cross-examination she testified, without objection, that appellant had threatened her in the past, that she sometimes was afraid of appellant, and that appellant was going to retaliate against the people involved if he was convicted. Over the objection of appellant, the district court gave the following instruction to the jury:

### INSTRUCTION NO. 8

If you find that the defendant attempted to persuade a witness to testify falsely or attempted to intimidate a witness, then you may consider that fact in determining the question of his guilt or innocence.

At the instructions conference, the district court noted that it had not intended to give the instruction before hearing Kennah's testimony. The court observed that, from Kennah's demeanor, it appeared she was afraid and intimidated, and, therefore, the instruction was appropriate.

This Court approved an instruction similar to Instruction No. 8 in *State v. Hines*, 79 Wyo. 65, 331 P.2d 605 (1958), *cert. denied* 366 U.S. 972, 81 S.Ct. 1938, 6 L.Ed.2d 1261 (1961), and the instruction is taken virtually verbatim from WPJIC § 2.201, "Efforts by Defendant to Alter Evidence." Appellant argues, nevertheless, that *Hines* was decided before the Wyoming Rules of Evidence became effective and that the testimony regarding intimidation should not have been admitted in the absence of a consideration of W.R.E. 404(b) regarding the admissibility of evidence of other crimes, wrongs, or acts. Appellant did not object to the testimony regarding intimidation, however, and he does not contend the admission of this testimony rises to the level of plain error. *See Lauthern*, 769 P.2d 350. In any event, in approving a substantially similar instruction in *Hines*, we stated that the instruction stated a well-

settled rule of law. We believe that is still the case. *See, e.g., United States v. Reamer*, 589 F.2d 769 (4th Cir.1978), *cert. denied* 440 U.S. 980, 99 S.Ct. 1787, 60 L.Ed.2d 240 (1979); *People v. Crandell*, 46 Cal.3d 833, 760 P.2d 423, 251 Cal.Rptr. 227 (1988), *cert. denied* —— U.S. ——, 109 S.Ct. 1936, 104 L.Ed.2d 408 (1989); *State v. Clark*, 209 Mont. 473, 682 P.2d 1339 (1984); *State v. Van Alcorn*, 136 Ariz. 215, 665 P.2d 97 (Ct.App.1983); *Bradley v. State*, 561 P.2d 548 (Okla.Cr.1977); 1 L. Sand, J. Siffert, W. Loughlin & S. Reiss, *Modern Federal Jury Instructions* ¶ 6.05, Instruction 6–16 (1989). Instruction No. 8 was supported by the evidence, and it is an adequate statement of the law in Wyoming. We find no error in the giving of this instruction.

To summarize, other than as to that part of appellant's judgment and sentence requiring repayment of defense costs, we affirm the decision of the district court in all respects. Where part of a divisible sentence is improper, we may modify it by vacating that part and affirming the balance. *Roose v. State*, 753 P.2d 574 (Wyo. 1988). We hold, therefore, that the provision of appellant's judgment and sentence ordering him to repay $2,750 to the State of Wyoming for the services of the public defender is void and that the judgment and sentence is otherwise affirmed.

Affirmed as modified.

THOMAS, J., files a specially concurring opinion in which CARDINE, C.J., and GOLDEN, J., join.

URBIGKIT, J., files a specially concurring opinion.

THOMAS, Justice, specially concurring, with whom CARDINE, Chief Justice, and GOLDEN, Justice, join.

I agree with the conclusion of the majority that King's judgment and sentence should be affirmed as modified. I cannot agree, however, as the majority determines, "that appellant has satisfied the first two *Opie* factors, * * *." At 949. The correct conclusion should be that, under these circumstances, the possible con-

fession of Jeff King is not newly discovered evidence.

The test articulated in *Opie v. State*, 422 P.2d 84, 85 (Wyo.1967), is taken from federal precedent. *United States v. Johnson*, 142 F.2d 588 (7th Cir.1944), cert. dismissed 323 U.S. 806, 65 S.Ct. 265, 89 L.Ed. 643 (1944). Consequently, the invocation of federal precedent with respect to similar facts is appropriate. A number of federal courts, considering motions for new trial under Rule 33, F.R.Cr.P., have concluded that the exercise of the privilege against self-incrimination does not have the effect suggested in the majority opinion in an analysis of what is "newly discovered" evidence. Those courts have held that, in circumstances which demonstrate that the evidence did exist at the time of trial, it should not be deemed to be "newly discovered" simply because the witness' exercise of testimonial privilege made it unavailable at trial. *United States v. Offutt*, 736 F.2d 1199 (8th Cir.1984); *United States v. Vergara*, 714 F.2d 21 (5th Cir.1983); *United States v. Diggs*, 649 F.2d 731 (9th Cir.1981), cert. denied 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981). See also *United States v. LaDuca*, 447 F.Supp. 779 (D.N.J.1978), cert. denied 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979), (holding that the exculpating testimony of a witness who had exercised his Fifth Amendment privilege at the defendant's trial was not newly discovered, but merely newly available; holding further that the defendant, in order to demonstrate diligence in producing the evidence, should have requested that the reluctant witness receive immunity; and affirmed on other grounds but criticized for the theory relative to "immunization" in *United States v. Rocco*, 587 F.2d 144, 147–48 (3d Cir.1978)).

Those federal cases are consistent with *Salaz v. State*, 561 P.2d 238 (Wyo.1977), in which we explained that, if, prior to or during the trial, the defendant had knowledge of the existence of a particular witness and the factual matters to which he could testify, the testimony could not subsequently be said to be "newly discovered" simply because the defendant could not produce it at his first trial. A clear distinction was made between "newly discovered" and "newly produced" evidence. *Salaz*, 561 P.2d 242–43. The same result was reached in *Gist v. State*, 737 P.2d 336 (Wyo.1987), appeal after remand 766 P.2d 1149 (1988). There the court held that a confession to the crime was not newly discovered because Gist had known of the potential testimony prior to the conclusion of his trial but had failed to produce it.

In these cases, the defendant knew the identity of a witness whose truthful testimony on the material facts of the case would corroborate the defendant's theory and serve to establish innocence. That identity was known from the outset of the trial. In both cases, the evidence was deemed to have been discovered prior to the end of the trial so far as a new trial motion based upon the ground of newly discovered evidence was concerned. The fact that the respective witnesses were known to the defendants at the time of the trials on the charged offenses, together with the common claim that the witnesses would exculpate the defendants, manifests the fact that no further investigation was required to "discover" such evidence. These defendants, as is true of King, simply failed to "produce" the evidence.

Our rule is that this court will limit itself, in reviewing the denial of a motion for new trial based upon grounds of newly discovered evidence, to the determination of whether the denial constituted an abuse of the trial court's discretion; that is, could the trial court reasonably have concluded as it did. *Gist*, 737 P.2d at 340; *Grable v. State*, 664 P.2d 531, 532–33 (Wyo.1983). The trial court should not grant such a motion based on the ground of newly discovered evidence unless the defendant has established that all four factors of the *Opie* test have been satisfied. *Gist; Frias v. State*, 722 P.2d 135 (Wyo.1986); *Opie*, 422 P.2d 84. In this instance, the conclusion of the trial court, based upon the precedent cited above that the post-trial confession was not newly discovered evidence, indeed was reasonable. I would affirm the denial of the motion for a new trial by holding that this was not newly discovered evi-

dence, but that it simply was evidence, known to the defendant at the time of the trial, that the defendant could not produce.

URBIGKIT, Justice, specially concurring.

I completely concur with the majority's opinion but write further only to discuss terminology. Assessment in this jurisdiction of criminal costs in criminal as well as civil cases has a strong precedent. *Kaess v. State*, 748 P.2d 698 (Wyo.1987); *State v. Dieringer*, 708 P.2d 1 (Wyo.1985); *Hahn v. State*, 78 Wyo. 258, 322 P.2d 896 (1958). Prosecutorial costs as a punitive assessment against the convicted individual invokes a more recently developing penalty thesis which can address investigation and trial preparation as well as facility and jury maintenance incurrences. Completely different concepts and constitutional questions arise. *Cf. Johnson v. State*, 532 P.2d 598 (Wyo.1975). Assessed court costs are essentially reimbursement obligations as similarly applied to both criminal and civil cases. *See* W.R.C.P. 1; W.R.C.P. 54(d); and W.R.Cr.P. 20(a). Prosecutorial costs frequently involving institutional expenditures whether itemized in amount or arbitrarily established to be a stated sum constitute a punitive assessment as a conviction punishment. Present here was a trial court's application of the conventional court costs reimbursement obligation and not the punitive prosecutorial cost. Consequently, this case is completely consistent with this court's recent review in *Kaess*, 748 P.2d 698. *See likewise Burke v. State*, 746 P.2d 852 (Wyo.1987) and compare retroactivity review in *Loomer v. State*, 768 P.2d 1042 (Wyo.1989).